UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN CHARLES,<br>    Plaintiff,<br><br>v.<br><br>OCWEN FEDERAL BANK FSB, OCWEN FINANCIAL CORPORATION, MASSACHSUETTS PROPERTY INSURANCE UNDERWRITERS ASSOCIATION, and ONE CALL INSURANCE AGENCY, INCORPORATED,<br>    Defendants. | CIVIL ACTION NO. 04-11625-RWZ |

**MEMORANDUM OF LAW OF THE DEFENDANTS, OCWEN LOAN SERVICING, LLC AS SUCCESSOR-IN-INTEREST TO OCWEN FEDERAL BANK FSB AND OCWEN FINANCIAL CORPORATION SUBMITTED IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

The defendants, Ocwen Loan Servicing, LLC as successor-in-interest to Ocwen Federal Bank FSB and Ocwen Financial Corporation (collectively, "Ocwen"), hereby submit their Memorandum of Law in Support of Ocwen's Motion for Partial Summary Judgment. Ocwen states that as a matter of undisputed fact and law, it is entitled to summary judgment in its favor.

### I.    RELEVANT MATERIAL FACTS

This suit was precipitated by a fire that occurred on February 2, 2004 at real property known as 14 Ditson Street, Boston, Massachusetts (the "Property") which is owned by the Plaintiff, Joan Charles (the "Plaintiff" or "Charles"). [SOF, ¶1]. The Property is a three-story apartment building located in the Dorchester neighborhood of Boston. [SOF, ¶2]. Charles apparently believes she is entitled to payment in some form, because the hazard insurance she obtained from for the Property expired prior to the fire. [SOF, ¶3].

Charles took title to the Property via a quit-claim deed. [SOF, ¶4]. There appears to have been several predecessor mortgagees to Ocwen. [SOF, ¶5]. In 2002, Charles apparently decided to re-finance the loan. On January 7, 2002, Charles executed a mortgage (the "Mortgage") and note ("Note") in favor of New Century Mortgage, Inc. [SOF, ¶6]. The Mortgage and Note were subsequently assigned to Ocwen. [SOF, ¶7].

Under the terms of the Mortgage, Charles was required to "keep the improvements. . .insured against loss by fire." [SOF, ¶8]. Charles was further required to maintain the insurance policies in the "amounts . . . and for the periods that [Ocwen] requires." [SOF, ¶9]. If for any reason, Charles failed to maintain the required insurance, Ocwen had the option to obtaining its own policy at Charles' expense. [SOF, ¶10].

Under the Mortgage, each due date, Charles was required to pay to Ocwen the periodic payments due under the Note, and, among other things, the monthly insurance premiums. [SOF, ¶11]. Ocwen would hold the insurance premiums in escrow, and pay when due. [SOF, ¶12]. However, Charles was required to "promptly furnish" to Ocwen all notices of premiums due. [SOF, ¶13]. The Mortgage provided that all notices given in connection with the Mortgage and shall not be deemed given to the Lender until actually received by Lender. In addition, the Hazard Insurance Authorization and Requirement executed by Charles ("HIAR") required Lender to ensure that "verification of renewal of insurance policies" was provided to the lender at least thirty days prior to the expiration of the policy. [SOF, ¶15]. Pursuant to the Mortgage, Charles obtained and maintained hazard insurance from Massachusetts Property Insurance Underwriter's Association ("MPIUA") from the date of the transaction until January 7, 2004. [SOF, ¶16].

Although Charles was aware that the Insurance was to expire on January 7, 2004, she failed to take steps to ensure the policy was renewed. [SOF, ¶17]. In addition, Charles failed to provide notice to Ocwen or request that Ocwen present a payment to the Insurer upon renewal of the policy. [SOF, ¶18]. According to Charles, she received a notice in early December 2003 which stated that unless MPIUA received a new premium payment of $1,906 by January 7, 2004, the policy would expire. [SOF, ¶19]. The lower portion of the notice contained a coupon (the "Coupon") which was to be returned with the payment. [SOF, ¶20]. A few days after receiving the notice, Charles claims she placed the Coupon into an envelope and mailed it via regular US mail to Ocwen at an address she obtained from her latest billing statement. [SOF, ¶21]. Charles included no other identifying information within the envelope other than her name. [SOF, ¶22].]
. Once she placed the Coupon in the mail, she took no other steps to confirm Ocwen received the Coupon, or to ensure her hazard insurance was renewed. [SOF, ¶23]. Although, it is unclear to what address the Coupon was sent, it is worthy to note that MPUIA's records showed 88 Willis Street New Bedford as Ocwen's address. [SOF, ¶24]. This address has never been the mailing address for Ocwen. [SOF, ¶25].

Ocwen never received any information from Charles regarding the expiration of the MPIUA policy, the new insurance carrier, if any, or the amount of the premium. [SOF, ¶26]. As such, Ocwen made no payment to MPIUA, and the policy expired. [SOF, ¶27]. Ocwen first became aware of the expired policy when notified by the Plaintiff shortly after the fire occurred. [SOF, ¶28].

Notwithstanding Charles' failure to renew her policy, Ocwen took steps to insure the Property by purchasing a forced placement hazard policy from Assurant (the "Assurant Policy"). [SOF, ¶29]. This policy was in effect at the time of the fire. [SOF, ¶30]. Charles was named as

an additional insured on this policy. [SOF, ¶31] In addition, after being notified by Charles that the policy had expired, Ocwen tendered the renewal check to MPIUA. [SOF, ¶32]. Unfortunately, MPIUA refused to honor the check, even though under its own policies and procedures, it was required to renew and backdate coverage. [SOF, ¶33].

Charles was aware of the Assurant Policy when she filed the Complaint because she called Assurant to make a claim on the policy shortly after the fire. [SOF, ¶34]. Assurant has agreed to pay Ocwen $86,000 for the loss and Ocwen has agreed to tender the check to Charles. [SOF, ¶35]. To date, Charles has refused to accept the insurance proceeds. [SOF, ¶36]. Charles has also failed to pay her monthly mortgage payment since December 2003. [SOF, ¶37].

## II.    SUMMARY JUDGMENT STANDARD

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In re Feifer Industries, Inc., 155 B.R. 256 (Bkrtcy. N.D. Ga. 1993). Summary Judgment provides for the prompt disposition of controversies on their merits without a trial if no real dispute as to their salient facts exists. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Once the moving party has come forward with evidence demonstrating that there is no genuine issue of material fact, the burden shifts to the opposing party to present factual materials which are admissible at trial as evidence to support its claim or defense. In re Feifer Industries, Inc, 155 B.R. 256 (Bkrtcy. N.D. Ga. 1993). This is an affirmative burden and cannot be left to surmise, conjecture, or imagination. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-43 (1986). A party opposing summary judgment cannot successfully avoid summary judgment by merely raising "vague and general allegations of expected proof." Community Nat. Bank v. Dawes, 369

4

Mass. 550, 555-56 (1976). The party opposing the motion must allege specific facts, which would establish the existence of a genuine issue of material fact in order to defeat the motion. Matsushita Electric Co. v. Zenth Radio Corp., 475 U.S. 574, 586 (1986). The granting of summary judgment is even proper when a moving party is unable to produce evidence to prove a negative. Celotex, 477 U.S. at 322. If the moving party demonstrates that there is an absence of evidence to support the non-moving party's case, the moving party is entitled to summary judgment. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (adopting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

### III.    ARGUMENT

#### A.    Introduction

Charles violated the terms of her mortgage by failing to maintain the required hazard insurance policy on the Property, and by failing to ensure Ocwen had notice of the premium renewal. Fortunately for all parties, after noting Charles' breach, Ocwen took steps to protect the Property from loss by placing its own insurance coverage. This "forced placement" policy was in effect at the time of the fire. As such, the undisputed facts establish that not only did Ocwen act in compliance with RESPA, but also with the terms of the Mortgage and Note.

#### B.    The Plaintiff Cannot Establish a RESPA Violation

The Plaintiff relies on the Federal statute commonly known as Real Estate Settlement Procedures Act ("RESPA")[1]. Specifically, the Plaintiff claims that by failing to tender the

---

[1] The Plaintiff also relies on a Federal regulation with virtually identical language :

> If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the disbursements in a timely manner, that is, on or before the deadline to avoid a penalty, as long as the borrower's payment is not more than 30 days overdue.

24 CFR §3500.17(k)1

renewal payment even though Ocwen never received notice that a payment was due, Ocwen violated 12 U.S.C. §2605(g), which states in pertinent part:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of . . ., insurance premiums . . .the servicer shall make payments from the escrow account for such . . .premiums . . .in a timely manner as such payments become due.

Setting aside whether the loan from which Charles' claims arise meets the jurisdictional requirements of being "federally related," or whether RESPA even applies, the Plaintiff cannot establish a violation of this section. The undisputed facts establish that the Plaintiff never provided Ocwen with notice of the escrow payment obligation. As such, compliance with Section 2605(g) in the manner the Plaintiff suggests would have been impossible.

Although the Plaintiff claims she sent the Coupon, Ocwen never received it. According to Charles, she placed the Coupon only, which contained no identifying information other than her name, into an envelope addressed to Ocwen and deposited it into the mail. Although the Plaintiff had experienced similar problems with timely payment of insurance premiums with a prior lender, she never followed up to ensure Ocwen actually received the coupon. Consequently, Ocwen never received notice of the payment obligation. As a result, without notice of a payment obligation, Ocwen cannot be said to have violated RESPA.

    1.    <u>Without Prior Notice to the Lender, Compliance with RESPA Was Impossible</u>

The Plaintiff claims that Section 2605(g) does not require prior notice of insurance premium in order to invoke Ocwen's duty to pay such a premium. In doing so, the Plaintiff erroneously imports strict liability into this Section where the statute evinces no legislative intent to do so.

6

Although disfavored in United States law, strict liability regimes have been deemed appropriate in limited circumstances. In order for a statute to be considered strict liability, it must present clear legislative intent to impose strict liability. In Re Goff, 301 B.R. 644, 648 (Bkrtcy. D.NJ. 2003). A review of Section 2605 yields no clear legislative intent to impose liability without fault.

The Plaintiff's attempts to sidestep the fact that Ocwen never received the premium due notice belies the plain language of the Mortgage and HIAR, and defies common sense. By claiming that Ocwen's duty to pay insurance premiums is not dependent on receiving actual notice of the amounts to be due for the next renewal period, the Plaintiff seeks to read into RESPA a requirement that the lender investigate and monitor for the borrower, the new payment amount and the identity of new insurer, if any, and draft a check to the insurer if and when the policy is set to expire. This is akin to requiring the lender to maintain the hazard insurance on the Property on its own, which in this case would directly contradict the terms of the Mortgage, which placed such responsibility on the Plaintiff, not Ocwen. As a policy matter, the Plaintiff's expansive construction of 12 USC §2605 would impose burdensome costs upon the lender, and interfere with the ability of parties to bargain and contract freely. To re-allocate by interpretation, the contractual responsibilities between borrower and lender, would run afoul of the plain language of RESPA, which provides that nothing in RESPA affects the enforceability of a mortgage[2].

2.   The Plaintiff Failed to Follow the Terms of the Mortgage and HIAR

The terms of the mortgage deed and HIAR impose additional legal requirements on the parties in excess of those duties set forth in RESPA. As part of the obligations contained within

---

[2] Nothing in [RESPA] shall affect the validity or enforceability of any sale or contract for the sale of real property or any loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan. 12 U.S.C. §2615 (2003)

7

the Mortgage and HIAR, the Plaintiff agreed to promptly provide all notices of premiums due, and to ensure that such verification of renewal was provided to Ocwen at least thirty days prior to expiration. It is undisputed that Charles failed to fulfill her obligations in this regard. In December of 2003, Charles cavalierly placed the Coupon in the US mail without any identifying information other than her name, and failed to follow up to ensure the Coupon was received. Thus, Charles did not promptly provide either the required notice or the proper verification of renewal.

Moreover, pursuant to the terms of the Mortgage any notice provided in connection with the Mortgage cannot be deemed to have been given to the lender until it is actually received. Thus, assuming Charles timely placed the Coupon in an envelope properly addressed to Ocwen, and placed it in the mail, she cannot be said to have provided valid notice to Ocwen because she failed to ensure Ocwen actually received it.

As the Plaintiff did not comply with the terms of her mortgage, she cannot now reassign the blame for such failures to Ocwen. The duty to maintain insurance on the Property was the Plaintiff's alone. As such, Ocwen's conduct regarding the Mortgage was not only <u>not</u> violative of RESPA, but entirely appropriate under the circumstances.

### C. **The Plaintiff Cannot Establish that Ocwen Committed A Breach of Contract**

The Plaintiff alleges in Count VIII of the Complaint that by failing to pay the insurance premiums, Ocwen committed a breach of contract. A review of the language of the Mortgage shows that it does not require Ocwen to pay the insurance premiums. Moreover, as set forth above, the Plaintiff cannot establish that Ocwen improperly failed to pay the hazard insurance for the Property because Ocwen never received the proper notice. Consequently, the Plaintiff cannot establish a breach. As such, no valid basis exists for a breach of contract claim.

### D. The Plaintiff cannot establish that Ocwen was Negligent

Under Massachusetts law, to prove a cause of action founded upon negligence, the plaintiff must satisfy the elements of duty, breach, causation, and damages. Coughlin v. Titus & Bean Graphics, Inc., 54 Mass.App.Ct. 633, 638 (2002). For the reasons stated above, the Plaintiff cannot establish that Ocwen breached any duty to Charles. Indeed, it was Charles who breached the terms of the Mortgage by failing to maintain the required hazard insurance on the Property.

Under the terms of Mortgage and HIAR, Ocwen's duties were limited to paying the insurance premiums when notified that a payment was due. It was Charles' sole responsibility to identify an insurer, timely notify Ocwen when the premiums came due, and provide verification of renewal 30 days prior to expiration of the policy. As such, there was no duty on the part of Ocwen to affirmatively contact the insurer to ensure the policy was renewed. Moreover, in order to "breach" such a duty, Charles would have had to provide notice to Ocwen, which she did not.

Furthermore, the Plaintiff cannot show that she was damaged by any of Ocwen's actions. Because Ocwen placed its own coverage on the Property which covered the fire loss at the Property, the alleged failure to renew the MPIUA policy is rendered moot. As a result, the Plaintiff cannot establish negligence on the part of Ocwen.

### E. The Plaintiff Cannot Establish that Ocwen Violated c. 93A

The Plaintiff claims in Counts III and IV of the Complaint that Ocwen violated M.G.L c. 93A . [Complaint, ¶¶34-39, Exhibit 11]. However, the Plaintiff cannot establish that Ocwen committed unfair and deceptive business practices in connection with its dealings with Charles. The gravamen of the Plaintiff's 93A claim is that by failing to pay the insurance premium, continuing to exercise its foreclosure rights under the Mortgage and Note, and providing

negative payment history to credit reporting agencies, Ocwen committed unfair and deceptive practices. However, the Plaintiff neither pled nor can it show that Ocwen engaged in conduct constituting a violation of c. 93A.

In order to qualify as a prohibited practice under M.G.L. c. 93A, conduct that exceeds ordinary negligence or breach of contract must be established. See American Tel. & Tel. Co. v. IMR Capital Corp., 888 F. Supp. 221, 256 (D. Mass. 1995). The plaintiff must show "a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979). At a minimum, such conduct must be shown to be willful or deliberate. Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 72 F.3d 190, 200 (D.Mass. 1995). In the mortgage lending context, courts have held that merely exercising rights held under a mortgage and note cannot constitute an unfair and deceptive practice unless "unfairness or oppressiveness in the parties' relationship" is shown. Debral Realty, Inc. v. Marlborough Cooperative Bank, 48 Mass. App. Ct. 92, 98 (1999). See also Ferris v. Federal Home Loan Mortgage Corp., 905 F. Supp. 23, 29 (D. Mass 1995) (holding poor servicing of mortgagors account, in failing to accurately estimate how much money would have to be paid into the escrow account, failing to promptly notify mortgagors of escrow shortfall, failing to require correct mortgage payments, and misapplying payments to earlier payments are not unfair and deceptive practices in the absence of bad faith or the intent to do harm).

If the allegations are taken in their most sinister construction, and assuming Ocwen had a duty to that which the Plaintiff was contractually required to do, the conduct does not reach the level of "rascality" required under c. 93A. The conduct described in the Complaint suggests inadvertence or mistake on the part of Ocwen. There is no conduct which could be construed as

evincing bad faith or the intent to do harm. There is no evidence of "unfairness or oppressiveness" in Ocwen's relationship with the Plaintiff. The Plaintiff simply stopped paying her monthly mortgage bills. In response, Ocwen made attempts to enforce its rights as a holder of the Note. This does not constitute bad faith. As such, the Plaintiff cannot establish that Ocwen engaged in unfair and deceptive business practices.

## CONCLUSION

The Plaintiff seeks to blame Ocwen for that which was solely within the Plaintiff's responsibility. The Plaintiff violated the terms of her mortgage by failing to maintain hazard insurance, failing to ensure Ocwen was notified of the insurance payment due, and by failing to provide verification of renewal thirty days prior to the expiration of the renewal period. The Plaintiff allegedly placed the renewal coupon in the mail with minimal identifying information and to an address they cannot remember. She then failed to follow up regarding the renewal until the fire occurred. In addition, she stopped paying her mortgage approximately 20 months ago but inexplicably complains of the resultant foreclosure and effect on her credit. As there is no evidence that Ocwen violated RESPA, committed negligence or anything that could be construed as an unfair and deceptive business practice, Ocwen respectfully requests that this Honorable Court enter summary judgment in Ocwen's favor on Counts I, III, IV, V and VIII of the Complaint.

Respectfully submitted by,

**DEFENDANTS OCWEN LOAN SERVICING, LLC AS SUCCESSOR-IN-INTEREST TO OCWEN FEDERAL BANK FSB AND OCWEN FINANCIAL CORPORATION**

By their attorneys,


 /s/ Christopher J. DeCosta
Paul Michienzie, Esq. - BBO #548701
Christopher J. DeCosta, Esq. – BBO #657527
Michienzie & Sawin LLC
745 Boylston Street, 5th Floor
Boston, MA 02116

Dated: September 28, 2006

**CERTIFICATE OF SERVICE**

    I, Christopher J. DeCosta, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by U.S. mail, first class, postage pre-paid on September 28, 2006.

                                           /s/ Christopher DeCosta
                                           Christopher J. DeCosta