UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN CHARLES,<br>    Plaintiff,<br><br>v.<br><br>OCWEN FEDERAL BANK FSB, OCWEN FINANCIAL CORPORATION, MASSACHSUETTS PROPERTY INSURANCE UNDERWRITERS ASSOCIATION, and ONE CALL INSURANCE AGENCY, INCORPORATED,<br>    Defendants. | CIVIL ACTION NO. 04-11625-RWZ |

**MEMORANDUM OF LAW OF THE DEFENDANTS,
OCWEN LOAN SERVICING, LLC AS SUCCESSOR-IN-INTEREST
TO OCWEN FEDERAL BANK FSB AND OCWEN FINANCIAL
CORPORATION SUBMITTED IN SUPPORT OF THEIR OPPOSITION
TO THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The defendants, Ocwen Loan Servicing, LLC as successor-in-interest to Ocwen Federal Bank FSB and Ocwen Financial Corporation (collectively, "Ocwen"), hereby submit their Memorandum of Law in Support of Ocwen's Opposition to the Plaintiff's Motion for Partial Summary Judgment. Ocwen states that as a matter of undisputed fact and law, the Plaintiff is not entitled to summary judgment in her favor.

### I.    PROCEDURAL HISTORY

On July 20, 2004, the Plaintiff commenced this action against Ocwen and other parties seeking damages for a myriad of claims, although only Count I, which charges a violation of the Real Estate Settlement Procedures Act ("RESPA") is addressed in the Plaintiff's Motion for Partial Summary Judgment. The Plaintiff amended its Complaint on February 8, 2005. On June

{00093457.DOC}

1, 2006, the Plaintiff moved for Partial Summary Judgment on Count I of its Complaint. See [Pl's Mot. for Summ. J. filed June 1, 2006].

## II.    RELEVANT MATERIAL FACTS

This suit was precipitated by a fire that occurred at real property known as 14 Ditson Street, Boston, Massachusetts (the "Property") which is owned by the Plaintiff, Joan Charles ("Charles"). [SOF, ¶1]. The Property is a three-story apartment building located in the Dorchester neighborhood of Boston. [SOF, ¶2] Charles apparently believes she is entitled to payment in some form, because the hazard insurance she obtained from for the Property expired prior to the fire. [SOF, ¶3].

Charles took title to the Property via a quit-claim deed. [SOF, ¶4]. There appears to have been several predecessor mortgagees to Ocwen. [SOF, ¶5]. In 2002, Charles apparently decided to re-finance the loan. On January 7, 2002, Charles executed a mortgage (the "Mortgage") and note in favor of New Century Mortgage, Inc. [SOF, ¶6]. The mortgage was subsequently assigned to Ocwen. [SOF, ¶7].

Under the terms of the Mortgage, Charles was required to "keep the improvements. . .insured against loss by fire." [SOF, ¶8]. Charles was further required to maintain the insurance policies in the "amounts . . . and for the periods that [Ocwen] requires." [SOF, ¶9]. If for any reason, Charles failed to maintain the required insurance, Ocwen had the option to obtaining its own policy at Charles' expense. [SOF, ¶10].

Under the Mortgage, each due date, Charles was required to pay to Ocwen the periodic payments due under the Note, and, among other things, the monthly insurance premiums. [SOF, ¶11]. Ocwen would hold the insurance premiums in escrow, and pay when due. [SOF, ¶12]. However, Charles was required to "promptly furnish" to Ocwen all notices of premiums due.

[SOF, ¶13]. In addition, the Hazard Insurance Authorization and Requirements ("HIAR") required Charles to ensure that "verification of renewal of insurance policies" was provided to the lender at least thirty days prior to the expiration of the policy. [SOF, ¶14]. The Mortgage provided that all notices given in connection with the Mortgage and shall not be deemed given to the Lender until actually received by Lender. [SOF, ¶15]. Pursuant to the Mortgage, Charles obtained and maintained fire insurance from Massachusetts Property Insurance Underwriter's Association ("MPIUA") from the date of the transaction until January 7, 2004. [SOF, ¶16].

Although Charles was aware that the Insurance was to expire on January 7, 2004, she failed to take steps to ensure the policy was renewed. [SOF, ¶17]. In addition, Charles failed to provide notice to Ocwen or request that Ocwen present a payment to the Insurer upon renewal of the policy. [SOF, ¶18]. According to Charles, she received a notice in early December 2003 which stated that unless MPIUA received a new premium payment of $1,906 by January 7, 2004, the policy would expire. [SOF, ¶19]. The lower portion of the notice contained a coupon (the "Coupon") which was to be returned with the payment. [SOF, ¶20]. A few days after receiving the notice, Charles claims she placed the Coupon into an envelope and mailed it via regular US mail to Ocwen at an address she obtained from her latest billing statement. [SOF, ¶21]. Charles included no other identifying information within the envelope other than her name. [SOF, ¶22.]. Once she placed the Coupon in the mail, she took no other steps to ensure Ocwen received the Coupon, or to ensure her hazard insurance was renewed. [SOF, ¶23]. Although, it is unclear to what address the Coupon was sent, it is worthy to note that MPUIA's records showed 88 Willis Street New Bedford as Ocwen's address. [SOF, ¶24]. This address has never been the mailing address for Ocwen. [SOF, ¶25].

Ocwen never received any information from Charles regarding the expiration of the MPIUA policy, the new insurance carrier, if any, or the amount of the premium. [SOF, ¶26]. As such, Ocwen made no payment to MPIUA, and the policy expired. [SOF, ¶27]. Ocwen first became aware of the expired policy when notified by the Plaintiff shortly after the fire occurred. [SOF, ¶28].

Notwithstanding Charles' failure to renew her policy, Ocwen took steps to insure the Property by purchasing a forced placement hazard policy from Assurant (the "Assurant Policy"). [SOF, ¶29]. This policy was in effect at the time of the fire. [SOF, ¶30]. Charles was named as an additional insured on this policy. [SOF, ¶31] In addition, after being notified by Charles that the policy had expired, Ocwen tendered the renewal check to MPIUA. [SOF, ¶32]. Unfortunately, MPIUA refused to honor the check, even though under its own policies, it was required to renew and backdate coverage. [SOF, ¶33].

Charles was aware of the Assurant Policy when she filed the Complaint because she called Assurant to make a claim on the policy shortly after the fire. [SOF, ¶34]. Assurant has agreed to pay Ocwen $86,000 for the loss and Ocwen has agreed to tender the check to Charles. [SOF, ¶35]. To date, Charles has refused to accept the insurance proceeds. [SOF, ¶36]. Charles has failed to pay her monthly mortgage payment since December 2003. [SOF, ¶37].

## II. ARGUMENT

### A. THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED FOR FAILURE TO COMPLY WITH LOCAL RULE 56.1

The Plaintiff's Motion for Partial Summary Judgment is legally insufficient and should be denied pursuant to Local Rule 56.1. ("L.R. 56.1"). The Plaintiff failed to include a concise statement of the material facts of record as required under L.R. 56.1.

L.R. 56.1 provides, in pertinent part:

> Motions for summary judgment shall include a concise statement of material facts of records as to which the moving party contends there is no issue genuine issue to be tried, with page references to affidavits, depositions, and other documentation. <u>Failure to include such a statement constitutes grounds for denial of the motion</u>.

(emphasis added).

L.R. 56.1 was "adopted to assist courts in determining quickly which facts are genuinely in dispute." <u>Engler v. Bard</u>, 1997 WL 136249 at *1 (D. Mass. 1997). The term "Facts" as used in L.R. 56.1, has been interpreted as meaning "historical facts, not mixed-law fact assertions, and not evaluative determinations." <u>Change the Climate, Inc. v. Mass. Bay Trans. Auth.</u>, 202 F.R.D. 43, 53 (D. Mass. 2001) (Denying summary judgment motions for failing to comply with L.R. 56.1). The movant has the burden of informing the court of the basis of its motion and identifying those portions of the record that show that there is an absence of a genuine dispute of material fact. <u>Id.</u> citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The Federal courts have consistently upheld

The Plaintiff's Motion for Partial Summary Judgment is woefully deficient. First, the Plaintiff offers no separate document setting forth what it considers to be the undisputed material facts of record. The Plaintiff provides "facts" only in one portion of its Memorandum of Facts and Law. Second, this "Fact" section comprises entirely of argument and sets forth very few facts. The "Facts" as set forth by the Plaintiff are as follows:

> Despite continued equivocation and vagueness on the part of Ocwen, Ocwen's Response to Plaintiff's Request for Admissions (Exhibit "A") and Ocwen's "Answer and Crossclaims," Paragraphs 7, 8 and 12, clearly establish the RESPA violation. There is absolutely no question as to such liability and no reasonable or good faith argument available to Ocwen: They were the loan servicer. There was an escrow of hazard insurance premiums required by the mortgage agreement. Ocwen failed to pay the hazard insurance insurance premium in a timely manner. Ocwen is liable to Plaintiff for her actual damages, costs and attorney.

This scant paragraph comprises the entire factual basis for the Plaintiff's motion. These passages clearly constitute argument not fact. Admittedly, there are some factual assertions contained in the above paragraph, but these assertions are not accompanied by "page references to affidavits, depositions, and other documentation" required by L.R. 56.1. The Plaintiff refers generally to the Ocwen's Response to the Plaintiff's Request for Admissions but fails to identify the fact for which it supports. The Plaintiff also references Ocwen's Answer and Crossclaims (not attached to the Plaintiff's motion) but does not identify what factual assertions these paragraphs support[1], only that they "clearly establish a RESPA violation."

The Plaintiff's motion does not provide enough clarity regarding what the Plaintiff believes are undisputed material facts so that Ocwen can review to determine which facts, if any, are in dispute. As such, the Plaintiff's motion should be denied for failure to comply with L.R. 56.1.

### B.   The Plaintiff Cannot Establish a RESPA Violation

The Plaintiff relies on the Federal statute commonly known as Real Estate Settlement Procedures Act ("RESPA")[2]. Specifically, the Plaintiff claims that by failing to tender the renewal payment even though Ocwen never received notice that a payment was due, Ocwen violated 12 U.S.C. §2605(g), which states in pertinent part:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of . . ., insurance premiums . . . the servicer shall make payments from

---

[1] Paragraphs 7 and 8 state only that covenant 3 and 5 of the Mortgage speak for themselves. In paragraph 12, Ocwen admits it did not pay the insurance premium.

[2] The Plaintiff also relies on a Federal regulation with virtually identical language :

> If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the disbursements in a timely manner, that is, on or before the deadline to avoid a penalty, as long as the borrower's payment is not more than 30 days overdue.

24 CFR §3500.17(k)1

the escrow account for such . . .premiums . . .in a timely manner as such payments become due.

Setting aside whether the loan from which Charles' claims meets the jurisdictional requirements of being "federally related," or whether RESPA even applies, the Plaintiff cannot establish a violation of this section. The undisputed facts establish that the Plaintiff never provided Ocwen with notice of the escrow payment obligation. As such, compliance with Section 2605(g) in the manner the Plaintiff suggests would have been impossible.

Although the Plaintiff claims she sent the Coupon, Ocwen never received it. According to Charles, she placed the Coupon only, which contained no identifying information other than her name, into an envelope addressed to Ocwen and deposited it into the mail. Although the Plaintiff had experienced similar problems with timely payment of insurance premiums with a prior lender, she never followed up to ensure Ocwen actually received the Coupon. Consequently, Ocwen never received notice of the payment obligation. As a result, without notice of a payment obligation, Ocwen cannot be said to have violated RESPA.

1.  Without Prior Notice to the Lender, Compliance with RESPA Would Be Impossible

The Plaintiff claims that Section 2605(g) does not require prior notice of insurance premium in order to invoke Ocwen's duty to pay such a premium. In doing so, the Plaintiff erroneously imports strict liability into this Section where the statute evinces no legislative intent to do so.

Although disfavored in United States law, strict liability regimes have been deemed appropriate in limited circumstances. In order for a statute to be considered strict liability, it must present clear legislative intent to impose strict liability. In Re Goff, 301 B.R. 644, 648

(Bkrtcy. D.NJ. 2003). A review of Section 2605 yields no clear legislative intent to impose liability without fault.

The Plaintiff's attempts to sidestep the fact that Ocwen never received the premium due notice belies the plain language of the Mortgage and HIAR, and defies common sense. By claiming that Ocwen's duty to pay insurance premiums is not dependent on receiving actual notice of the amounts to be due for the next renewal period, the Plaintiff seeks to read into RESPA a requirement that the lender investigate and monitor for the borrower to determine the new payment amount, the identity of the new insurer, if any, and draft a check to the insurer if and when the policy is set to expire. This is akin to requiring the lender to maintain the hazard insurance on the Property on its own, which in this case would directly contradict the terms of the Mortgage, which placed such responsibility on the Plaintiff, <u>not</u> Ocwen. As a policy matter, the Plaintiff's expansive construction of 12 USC §2605 would impose burdensome costs upon the lender, and interfere with the ability of parties to bargain and contract freely. To re-allocate by interpretation, the contractual responsibilities between borrower and lender would run afoul of the plain language of RESPA, which provides that nothing in RESPA affects the enforceability of a mortgage[3].

    2.    <u>The Plaintiff Failed to Follow the Terms of the Mortgage and HIAR</u>

The terms of the mortgage deed and HIAR impose additional legal requirements on the parties in excess of those duties set forth in RESPA. As part of the obligations contained within the Mortgage and HIAR, the Plaintiff agreed to promptly provide all notices of premiums due, and to ensure that such verification of renewal was provided to Ocwen at least thirty days prior to expiration. It is undisputed that Charles failed to fulfill her obligations in this regard. In

---

[3] Nothing in [RESPA] shall affect the validity or enforceability of any sale or contract for the sale of real property or any loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan. 12 U.S.C. §2615 (2003)

8

December of 2003, Charles cavalierly placed the Coupon in the US mail without any identifying information other than her name, and failed to follow up to ensure the Coupon was received. Thus, Charles did not promptly provide either the required notice or the proper verification of renewal.

Moreover, pursuant to the terms of the Mortgage notice provided in connection with the Mortgage cannot be deemed to have been given to the lender until it is actually received. Thus, assuming Charles timely placed the Coupon in an envelope properly addressed to Ocwen, and placed it in the mail, she cannot be said to have provided valid notice to Ocwen because she failed to ensure Ocwen actually received it.

As the Plaintiff did not comply with the terms of her mortgage, she cannot now reassign the blame for such failures to Ocwen. The duty to maintain insurance on the Property was the Plaintiff's alone. As such, Ocwen's conduct regarding the Mortgage was not only <u>not</u> violative of RESPA, but entirely appropriate under the circumstances.

## **CONCLUSION**

The Plaintiff's Motion for Partial Summary Judgment should be denied. The Plaintiff's motion fails to comply with Local Rule 56.1 because she fails to provide the facts, along with citations to the record, upon which the Plaintiff relies for her motion. In addition, the Plaintiff's motion should be denied for the independent basis that she has no reasonable likelihood of proving a RESPA violation at trial.

Respectfully submitted by,

**DEFENDANTS OCWEN LOAN SERVICING, LLC AS SUCCESSOR-IN-INTEREST TO OCWEN FEDERAL BANK FSB AND OCWEN FINANCIAL CORPORATION**

By their attorneys,


 /s/ Christopher J. DeCosta
Paul Michienzie, Esq. - BBO #548701
Christopher J. DeCosta, Esq. – BBO #657527
Michienzie & Sawin LLC
745 Boylston Street, 5th Floor
Boston, MA 02116

Dated: September 28, 2006

## CERTIFICATE OF SERVICE

I, Christopher J. DeCosta, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by U.S. mail, first class, postage pre-paid on September 28, 2006.

      /s/ Christopher DeCosta
      Christopher J. DeCosta