UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN CHARLES,<br>    Plaintiff,<br><br>v.<br><br>OCWEN FEDERAL BANK FSB, OCWEN FINANCIAL CORPORATION, MASSACHUSETTS PROPERTY INSURANCE UNDERWRITERS ASSOCIATION, and ONE CALL INSURANCE AGENCY, INCORPORATED,<br>    Defendants. | CIVIL ACTION NO. 04-11625-RWZ |

**DEFENDANTS OCWEN LOAN SERVICING, LLC AS
SUCCESSOR-IN-INTEREST TO OCWEN FEDERAL BANK FSB
AND OCWEN FINANCIAL CORPORATION'S CONCISE
STATEMENT OF THE MATERIAL FACTS IN DISPUTE AND OF
ADDITIONAL FACTS OF RECORD SUPPORTING DENIAL OF
THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Ocwen Loan Servicing, LLC as successor-in-interest to Ocwen Federal Bank FSB and Ocwen Financial Corporation (collectively, "Ocwen"), are opposing the Plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(b), and Local Rule 56.1. This separate pleading shall constitute Ocwen's concise statements of the material facts in dispute and of additional facts of record supporting denial of the Plaintiff's motion, as required by Local Rule 56.1, in support of Ocwen's Opposition to the Plaintiff's Motion for Partial Summary Judgment.

**CONCISE STATEMENT OF MATERIAL FACTS IN DISPUTE**

As the Plaintiff has not complied with Local Rule 56.1 by specifically identifying the material facts that it asserts are undisputed, Ocwen is unable to identify concisely,

{00093490.DOC}

which material facts contained within the Plaintiff's Motion for Partial Summary Judgment Ocwen disputes. However, Ocwen does dispute that it violated 12 U.S.C. §2605 in its dealings with the Plaintiff.

## STATEMENT OF THE ADDITIONAL MATERIAL FACTS ON RECORD SUPPORTING DENIAL OF THE PLAINTIFF'S MOTION FOR PARTIAL SUMMAY JUDGMENT

1. This suit was precipitated by a fire that occurred at real property known as 14 Ditson Street, Boston, Massachusetts (the "Property") which is owned by the Plaintiff, Joan Charles ("Charles"). [Complaint, ¶15, Exhibit 1].

2. The Property is a three-story apartment building located at 14 Ditson Street in Boston. [Complaint, ¶4, Exhibit 1].

3. Charles apparently believes she is entitled to payment in some form, because the hazard insurance she obtained from for the Property expired prior to the fire. [Complaint, Exhibit 1].

4. Charles took title to the Property via a quit-claim deed. [Quit-claim Deed, Exhibit 2].

5. There appears to have been several predecessor mortgagees to Ocwen. See [Notice of Expiration dated September 24, 2001, Exhibit 3].

6. On January 7, 2002, Charles executed a mortgage deed (the "Mortgage") and note in favor of New Century Mortgage, Inc. [Mortgage Deed, Exhibit 4].

7. The mortgage was subsequently assigned to Ocwen. [Notice of Assignment, Exhibit 5].

8. Under the terms of the Mortgage, Charles was required to "keep the improvements. . .insured against loss by fire." [Mortgage Deed, ¶5, Exhibit 4].

9. Charles was further required to maintain the insurance policies in the "amounts . . . and for the periods that [Ocwen] requires." [Mortgage Deed, ¶5, Exhibit 4].

10. If for any reason, Charles failed to maintain the required insurance, Ocwen had the option to obtaining its own policy at Charles' expense. [Mortgage Deed, ¶5, Exhibit 4].

11. Under the Mortgage, each due date, Charles was required to pay to Ocwen the periodic payments due under the Note, and, among other things, the monthly insurance premiums. [Mortgage, ¶3, Exhibit 4].

12. Ocwen would hold the insurance premiums in escrow, and pay when due. [Mortgage, ¶3, Exhibit 4].

13. However, Charles was required to "promptly furnish" to Ocwen all notices of premiums due. [Mortgage, ¶3, Exhibit 4].

14. In addition, the Hazard Insurance Authorization and Requirements ("HIAR") required Charles to ensure that "verification of renewal of insurance policies" was provided to the lender at least thirty days prior to the expiration of the policy. [Hazard Insurance Authorization and Requirements, ¶9, Exhibit 6].

15. The Mortgage provided that all notices given in connection with the Mortgage and shall not be deemed given to the Lender until actually received by Lender. [Mortgage, ¶15, Exhibit 4].

16. Pursuant to the Mortgage, Charles obtained and maintained fire insurance from Massachusetts Property Insurance Underwriter's Association ("MPIUA") from the date of the transaction until January 7, 2004. [Affidavit of Chomie Neil, ¶6, Exhibit 7].

17. Although Charles was aware that the Insurance was to expire on January 7, 2004, she failed to take steps to ensure the policy was renewed. See [Deposition Transcript of Joan Charles,[1] pp. 53, Exhibit 8].

18. In addition, Charles failed to provide notice to Ocwen or request that Ocwen present a payment to the Insurer upon renewal of the policy. [Affidavit of Chomie Neil, ¶7, Exhibit 7].

19. According to Charles, she received a notice in early December 2003 which stated that unless MPIUA received a new premium payment of $1,906 by January 7, 2004, the policy would expire. [Charles Tr., pp. 18-27 & 99, Exhibit 8].

20. The lower portion of the notice contained a coupon (the "Coupon") which was to be returned with the payment. [Charles Tr., pp. 26, Exhibit 8]

21. A few days after receiving the notice, Charles claims she placed the Coupon into an envelope and mailed it via regular US mail to Ocwen at an address she obtained from her latest billing statement. [Charles Tr., pp. 27, Exhibit 8].

22. Charles included no other identifying information within the envelope other than her name. [Charles Tr., pp. 33 & 36, Exhibit 8]; [Renewal Offer, Exhibit 9].

23. Once she placed the Coupon in the mail, she took no other steps to ensure Ocwen received the Coupon, or to ensure her hazard insurance was renewed. [Charles Tr., pp. 55 & 99, Exhibit 8].

24. Although, it is unclear to what address the Coupon was sent, it is worthy to note that MPUIA's records showed 88 Willis Street New Bedford as Ocwen's address. [Expiration Notice, Exhibit 10].

---

[1] Hereinafter, "Charles Tr."

{00093490.DOC}

25. This address has never been the mailing address for Ocwen. [Affidavit of Chomie Neil, ¶8, Exhibit 7]

26. Ocwen never received any information from Charles regarding the expiration of the MPIUA policy, the new insurance carrier, if any, or the amount of the premium. [Affidavit of Chomie Neil, ¶7, Exhibit 7].

27. As such, Ocwen made no payment to MPIUA, and the policy expired. [MPUIA's Answers to Ocwen's Interrogatories, ¶4, Exhibit 11].

28. Ocwen first became aware of the expired policy when notified by the Plaintiff shortly after the fire occurred. [Affidavit of Chomie Neil, ¶9, Exhibit 7].

29. Notwithstanding Charles' failure to renew her policy, Ocwen took steps to insure the Property by purchasing a forced placement hazard policy from Assurant (the "Assurant Policy"). [Assurant Policy, Exhibit 12, Affidavit of Chomie Neil, ¶12, Exhibit 5].

30. This [Assurant] policy was in effect at the time of the fire. [Assurant Policy, p. 1, Exhibit 12]. Charles was named as an additional insured on this policy. [Id.]

31. In addition, after being notified by Charles that the policy had expired, Ocwen tendered the renewal check to MPIUA. [Letter Ocwen to Charles Dated February 10, 2004, Exhibit 13].

32. Unfortunately, MPIUA refused to honor the check, even though under its own policies, it was required to renew and backdate coverage. [Charles Tr., pp. 107, Exhibit 8].

33. Charles was aware of the Assurant Policy when she filed the Complaint because she called Assurant to make a claim on the policy shortly after the fire. [Assurant Telephone Call Record, Exhibit 14].

34. Assurant has agreed to pay Ocwen $86,000 for the loss and Ocwen has agreed to tender the check to Charles. [Letter Assurant to Charles, Exhibit 13].

35. To date, Charles has not accepted the check. [Charles Tr., pp. 62 & 79, Exhibit 8].

36. Charles has failed to pay her monthly mortgage payment since December 2003, and as such, Ocwen attempted to exercise its right to foreclose on the mortgage as set forth in the Mortgage. [Charles Tr., pp. 68, Exhibit 6, Mortgage Deed, Exhibit 4]; [Affidavit of Chomie Neil, ¶12, Exhibit 7].

Respectfully submitted by,

**DEFENDANTS OCWEN LOAN SERVICING, LLC AS SUCCESSOR-IN-INTEREST TO OCWEN FEDERAL BANK FSB AND OCWEN FINANCIAL CORPORATION**

By their attorneys,

/s/ Christopher J. DeCosta
Paul Michienzie, Esq. - BBO #548701
Christopher J. DeCosta, Esq. – BBO #657527
Michienzie & Sawin LLC
745 Boylston Street, 5th Floor
Boston, MA 02116

Dated: September 28, 2006

{00093490.DOC}

## **CERTIFICATE OF SERVICE**

I, Christopher J. DeCosta, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by U.S. mail, first class, postage pre-paid on September 28, 2006.

                    /s/ Christopher DeCosta
                    Christopher J. DeCosta

{00093490.DOC}