# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-11625-RWZ

Joan Charles,
    Plaintiff,

v.

Ocwen Federal Bank, FSB;
Ocwen Financial Corporation;
Massachusetts Property Insurance
Underwriting Association;
and One Call Insurance Agency,
Incorporated,
    Defendants.

## AMENDED COMPLAINT AND JURY DEMAND

### INTRODUCTION

This action is brought against various entities responsible for the non payment of insurance premiums which led to a lapse of coverage, or alternatively the wrongful refusal of insurance coverage, for a three family house which suffered a significant fire loss.

### FACTS

1.    The Plaintiff, Joan Charles (hereinafter "Plaintiff" or "Charles") is an individual currently residing at 147 Bowdoin Street, First Floor, Dorchester, Essex County, Massachusetts.

2.    The Defendants, Ocwen Federal Bank, FSB, and Ocwen Financial Corporation, (together hereinafter "Ocwen") are affiliated and / or subsidiary and parent foreign

1

entities with a principal place of business at 1675 Palm Beach Lakes Blvd., West Palm Beach, Florida.

3.      The Defendant, One Call Insurance Agency, Incorporated, ("One Call") is a domestic corporation with a principle place of business at 121B Tremont Street, Suite 25, in Brighton, Massachusetts.

4.      The Defendant, Massachusetts Property Insurance Underwriting Association ("MPIUA") is an association of property insurance underwriters with a principle place of business at 2 Center Plaza, Boston, Massachusetts.

5.      Jurisdiction over Ocwen is proper under Massachusetts General Law c. 223A § 3, as at all relevant times, Ocwen has transacted business within the Commonwealth, has contracted to supply services within the Commonwealth, and / or has caused tortuous injury by act or omission within the Commonwealth, as further described below.

4.      Plaintiff is the owner of certain real property known and numbered as 14 Ditson Street, Boston, MA 02122 (hereinafter "the property").

5.      On or about January 7, 2002, Plaintiff obtained a first mortgage on the property (hereinafter the "mortgage" or "mortgage agreement") with New Century Mortgage Corp.

6.      The mortgage was transferred from New Century Mortgage Corp., to Ocwen, which at all relevant times has been the lender and servicer under the mortgage agreement.

7.      Uniform Covenant 3 of the mortgage agreement provides, in part, for the periodic payment of funds by Plaintiff to Ocwen for certain "escrow items" including premiums for various insurance required by the lender.

2

8. Uniform Covenant 5 of the mortgage agreement provided that such funds were to be held in an escrow account by Ocwen, for payment by Ocwen of amounts due for, amongst others, property insurance premiums to keep the property insured against a loss by fire.

9. Defendant was responsible, under various common and statutory laws, including but not limited to both contract law and 12 U.S.C. § 2605 (g)\*, for payment of the insurance premiums due on the property.

10. As of January 7, 2004, Plaintiff was current in the payment of her mortgage debt to Defendant.

11. On or about January 7, 2004, payment was due for the hazard insurance premium on the property policy provided by the MPIUA, through One Call.

12. Ocwen failed to pay the insurance premium due.

13. According to the MPIUA the policy expired or lapsed on January 8, 2004.

14. Plaintiff was not given notice of the non-payment of premium or of the expiration of the policy coverage.

15. On or about February 2, 2004, the property experienced a catastrophic fire loss.

---

\*

12 U.S.C. § 2605 (g) states: "If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a *timely manner* as such payments become due." (emphasis added)

24 C.F.R. 3500.17(k) further states "(1) If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the *servicer must pay the disbursements in a timely manner, that is, on or before the deadline to avoid a penalty*, as long as the borrower's payment is not more than 30 days overdue. (2) The

3

16. On or about February 2, 2004, Plaintiff, through her son, and on the advice of One Call, tendered payment of the insurance premium directly to the MPIUA at their office at 2 Center Plaza, Boston, Massachusetts.

17. On or about February 2, 2004, at approximately 4:50 p.m., the MPIUA refused the tendered of payment of the insurance premium, claiming that the office was closed and no one could accept such tender.

18. Normal business hours of the MPIUA are until 5:00 p.m.

19. On or about February 6, 2004, Ocwen sent the MPIUA a check for $1,906.00, presumably for payment of the insurance premium.

20. On or about February 12, 2004, the MPIUA returned Ocwen's check, stating that the insurance coverage had expired and that the property was ineligible for coverage due to the presence of un-repaired damage.

21. On or about March 3, 2004, Plaintiff, through counsel, sent Ocwen a demand letter notifying Defendant of the above stated facts and demanding relief and compensation in accordance with the provisions of Massachusetts General Law c. 93A, and notifying Ocwen that Plaintiff was represented by counsel and that Plaintiff's mortgage payments to Defendant would cease until resolution of the matter.

22. On numerous occasions since receiving such notice of representation as described in paragraph 21 above, Ocwen has made demand for payment of the mortgage debt directly to Plaintiff by letter and telephone.

---

servicer must advance funds to make disbursements in a timely manner as long as the borrower's payment is not more than 30 days overdue." (emphasis added)

23. Since being notified as described in paragraph 19, Ocwen has reported negative credit information to credit reporting agencies, harming Plaintiff's credit at a critical and difficult time for Plaintiff.

24. As the direct result of the events described above, Plaintiff has been caused severe emotional distress.

## COUNT I – VIOLATION OF 12 U.S.C. § 2605 (OCWEN)

25. Plaintiff restates paragraphs 1 – 24 as if expressly restated herein.

26. Defendant's failure to pay the insurance premium due was in direct violation of 12 U.S.C. § 2605.

27. 12 U.S.C. § 2605 (f) states in relevant part: "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: (1) Individuals: In the case of any action by an individual, an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure, and (3) Costs: In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

28. Ocwen has failed to comply with the provisions of 12 U.S.C. § 2605.

## COUNT II – VIOLATION OF 15 U.S.C. § 1692c (OCWEN)

29. Plaintiff restates paragraphs 1 – 28 as if expressly restated herein.

30. On or about March 2, 2004, Plaintiff, through counsel, sent Ocwen two separate letters by certified mail, return receipt requested, making it clear that Plaintiff was

represented by counsel regarding all matters relating to the mortgage loan and the property.

31.  On numerous occasions after receiving such notice described in paragraph 30 above, Ocwen contacted Plaintiff directly demanding payment of the mortgage debt.

32.  Ocwen has reported negative credit information to credit reporting agencies, harming Plaintiff's ability to obtain credit.

33.  Ocwen's continuing to demand payment directly from Plaintiff, and Ocwen's reporting of negative credit information regarding Plaintiff are in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c.

### COUNT III – VIOLATION OF M.G.L. c. 93A (OCWEN)

34.  Plaintiff restates paragraphs 1 – 33 as if expressly restated herein.

35.  On or about March 3, 2004, Plaintiff, through her attorney, sent Defendant a demand letter in compliance with the requirements of M.G.L. c. 93A (a copy of this demand letter is attached hereto as Exhibit A).

36.  On or about March 20, 2004, Plaintiff's attorneys received a reply letter from Defendant denying liability and refusing to make reasonable offer of settlement.

37.  The unfair and / or deceptive act relied on is the failure of Defendant to pay the insurance premium due, subsequently continuing to demand payment directly from Plaintiff and purposefully harming Plaintiff's credit.

### COUNT IV – VIOLATION OF M.G.L. c. 93 AND THEREBY c. 93A (OCWEN)

38.  Plaintiff restates paragraphs 1 – 37 as if expressly restated herein.

39.  Defendant's demanding payment of the mortgage debt and providing negative credit information is a debt collection in an unfair, deceptive or unreasonable manner

within the meaning of M.G.L. c. 93 § 49, and as such is a separate violation of M.G.L. c. 93A as set forth in M.G.L. c. 93 § 49.

## COUNT V – NEGLIGENCE (OCWEN)

40. Plaintiff restates paragraphs 1 - 39 as if expressly restated herein.

41. Ocwen had an affirmative duty to pay the insurance premium.

42. Ocwen negligently breached that duty by failing to make the payment.

43. Ocwen's failure to make payment was negligent and caused Plaintiff to incur substantial damages through the loss of insurance coverage and the subsequent fire loss which occurred at the property.

## COUNT VI – NEGLIGENCE (ONE CALL)

44. Plaintiff restates paragraphs 1 - 43 as if expressly restated herein.

45. As an agent of Plaintiff and as a liason between Ocwen and MPIUA, One Call had an affirmative duty to ensure and coordinate payment of the insurance premium.

46. One Call negligently breached that duty by failing to ensure and coordinate payment of the insurance premium and failing to provide notice or forward correspondence between the parties.

47. One Call's failure to ensure and coordinate payment of the insurance premium and to provide notice or forward correspondence between the parties was negligent and caused Plaintiff to incur substantial damages through the loss of insurance coverage and the subsequent fire loss which occurred at the property.

## COUNT VII – NEGLIGENCE (MPIUA)

48. Plaintiff restates paragraphs 1 - 47 as if expressly restated herein.

49. As insurance provider of the property, MPIUA had an affirmative duty to provide proper billing to the persons responsible for payment of the premiums, to provide notice of failure to pay to all parties, and to provide notice of the lapse or expiration of insurance coverage.

50. MPIUA negligently breached that duty by failing to bill the persons responsible for payment of the premium (Ocwen), by failing to send any party notice that the payment was overdue, and by failing to send any party notice that the coverage had lapsed or expired or was in jeopardy of the same.

51. MPIUA's failure to bill the persons responsible for payment of the premium (Ocwen), failure to send any party notice that the payment was overdue, and / or failure to send any party notice that the coverage had lapsed or expired or was in jeopardy of the same was negligent and caused Plaintiff to incur substantial damages through the loss of insurance coverage and the subsequent fire loss which occurred at the property.

## COUNT VIII – BREACH OF CONTRACT (OCWEN)

52. Plaintiff restates paragraphs 1 - 51 as if expressly restated herein.

53. Plaintiff and Ocwen were parties to the mortgage agreement contract.

54. Under the contract, Ocwen had an express and / or implied obligation to pay the insurance premium.

55. Ocwen breached its contract with Plaintiff by failing to pay the insurance premium.

56. Ocwen's breach of contract caused Plaintiff to incur substantial damages through the loss of insurance coverage and the subsequent fire loss which occurred at the property.

## COUNT IX – BREACH OF CONTRACT (ONE CALL)

57. Plaintiff restates paragraphs 1 - 56 as if expressly restated herein.

58. Plaintiff and One Call were parties to an agency contract for One Call to act as agent of Plaintiff in order for One Call to coordinate insurance on the property and coordinate payment of the insurance premium.

59. One Call breached its contract with Plaintiff by failing to coordinate payment of the insurance premium and failing to provide notice or forward correspondence between the parties.

60. One Call's failure to coordinate payment of the insurance premium was a breach of contract and caused Plaintiff to incur substantial damages through the loss of insurance coverage and the subsequent fire loss which occurred at the property.

## COUNT X – BREACH OF CONTRACT (MPIUA – NOTICE)

61. Plaintiff restates paragraphs 1 - 60 as if expressly restated herein.

62. Plaintiff and MPIUA were parties to an insurance contract for the property.

63. Under the contract, MPIUA had an express and / or implied duty to bill the persons responsible for payment of the premium (Ocwen), to send all parties notice that the payment was overdue, and to send all parties notice that the coverage had lapsed or expired or was in jeopardy of the same.

64. MPIUA's failure to bill the persons responsible for payment of the premium (Ocwen), failure to send any party notice that the payment was overdue, and / or failure to send any party notice that the coverage had lapsed or expired or was in jeopardy of the same was a breach of its contract with plaintiff and caused Plaintiff to incur substantial

damages through the loss of insurance coverage and the subsequent fire loss which occurred at the property.

### COUNT XI – BREACH OF CONTRACT (MPIUA – TENDER OF PREMIUM)

65. Plaintiff restates paragraphs 1 - 64 as if expressly restated herein.

66. Under the insurance contract, MPIUA had an express or implied obligation to follow its own policies or regulations with regard to the rights of insured persons to renew their coverage after a lapse.

67. An express policy of MPIUA is to allow renewal or re-issuance of insurance coverage which has lapsed or expired due to non-payment of premium, if the premium is tendered within 60 days of the lapse or expiration, and the renewal or re-insurance shall be effective as of the day of the premium tender.

68. By rejecting the tendered premium on the day of the loss, MPIUA acted contrary to its own policy and therefore was in breach of its contract with Plaintiff, and caused Plaintiff to incur substantial damages through the loss of insurance coverage and the subsequent fire loss which occurred at the property.

### COUNT XII – BREACH OF CONTRACT (MPIUA – PAYMENT OF CLAIM)

69. Plaintiff restates paragraphs 1 – 68 as if expressly restated herein.

70. On or about February 3, 2004, Plaintiff made a claim on her fire / hazard insurance policy with MPIUA for the damage sustained in the fire of February 2, 2004.

71. Claiming that the policy had expired, MPIUA has refused, failed and / or neglected to pay or honor such claim.

72. As the result of MPIUA's refusal, failure and / or neglect to pay or honor such claim, Plaintiff has been harmed.

## COUNT XIII – VIOLATION OF M.G.L. c. 175 § 193P (MPIUA)

73. Plaintiff restates paragraphs 1 – 72 as if expressly restated herein.

74. MPIUA failed to properly and adequately notify Plaintiff of its intent not to renew or reissue its policy at least forty-five (45) days prior to the expiration of the policy as required by M.G.L. c. 175 § 193P.

75. As a result of MPIUA's failure to provide such notice, Plaintiff was harmed by the lapse of such insurance or the refusal by MPIUA to pay the claim made by Plaintiff on such policy.

## COUNT XIV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OCWEN)

76. Plaintiff restates paragraphs 1 – 75 as if expressly restated herein.

77. Ocwen has instituted Foreclosure proceedings against Plaintiff

78. Ocwen knew or should have known that failing to pay the insurance premium, continuing to demand payment of the mortgage debt directly from Plaintiff, making negative credit reports and instituting foreclosure proceedings against Plaintiff would result in the emotional distress of Plaintiff.

79. Defendant's conduct was extreme and outrageous, beyond the bounds of decency and intolerable in a civilized society.

80. Defendant's conduct caused Plaintiff's emotional distress.

81. Plaintiff's distress has been severe and of a nature that no reasonable person could be expected to endure.

## COUNT XV – TRESPASS TO CHATTEL (OCWEN)

82. Plaintiff restates paragraphs 1 – 80 as if expressly restated herein.

83. On or about October 27, 2004, without permission from or notice to Plaintiff or Plaintiff's counsel, agents of Ocwen: "Safeguard Properties, Inc." destroyed plaintiff's property by cutting off a padlock on the property, and entered the building of the property, allegedly to "winterize" the property (according to a note left at the scene and verbal representations to Plaintiff's counsel by phone).

84. Ocwen did not have Plaintiff's permission or authority to destroy Plaintiff's personal property.

## COUNT XVI – TRESPASS (OCWEN)

85. Plaintiff restates paragraphs 1 – 84 as if expressly restated herein.

86. Ocwen did not have Plaintiff's permission or authority to enter the property.

## COUNT XVII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OCWEN)

87. Plaintiff restates paragraphs 1 – 86 as if expressly restated herein.

88. On or about December 9th, 2004, agents of Ocwen, Frontier Adjusters, contacted Plaintiff stating that they were her insurance company and that they wished to inspect the fire damage.

89. When questioned regarding employment and authority, Frontier Adjusters stated that they worked for Ocwen and that they had been told that the property was already foreclosed and owned by Ocwen.

90. Under the circumstances of the instant litigation, Defendant's conduct in having its agent inform Plaintiff that the Property was already foreclosed on was extreme and outrageous, beyond the bounds of decency and intolerable in a civilized society.

91. Defendant's conduct caused Plaintiff's emotional distress.

92.   Plaintiff's distress has been severe and of a nature that no reasonable person could be expected to endure.

## COUNT XVIII – TRESPASS TO CHATTEL (OCWEN)

93.   Plaintiff restates paragraphs 1 – 92 as if expressly restated herein.

94.   At some point prior to February 4, 2005, without permission from or notice to Plaintiff or Plaintiff's counsel, on information and belief, unknown agents of Ocwen destroyed plaintiff's property by cutting off a padlock on the property, and entered the building of the property.

95.   Ocwen did not have Plaintiff's permission or authority to destroy Plaintiff's personal property.

## COUNT XIX – TRESPASS (OCWEN)

96.   Plaintiff restates paragraphs 1 – 95 as if expressly restated herein.

97.   Ocwen did not have Plaintiff's permission or authority to enter the property.

**WHEREFORE, Plaintiff demands trial by jury and judgment against Defendants and for Plaintiff on all counts as follows:**

1.   For Defendants to pay to Plaintiff all damages suffered by Plaintiff as the result of Defendants' actions or failures as described in the Complaint.

2.   For double or treble damages as provided for by M.G.L. c. 93A § 9(3) and any other relevant statutes or rules.

3.   For attorneys fees, interest and costs as provided for by 12 U.S.C. § 2605 (f), M.G.L. c. 93A and any other relevant statutes and rules.

4.   For such other relief as this Honorable Court deems meet and just.

Dated: Feb. 8, 2005

                                    Respectfully Submitted
                                    Plaintiff, by her Attorneys

                                    /s/ Barry Greene

                                    Barry Greene, BBO # 209840
                                    James Hoyt, BBO # 644651
                                    Portnoy and Greene, P.C.
                                    197 1st Ave., Suite 130
                                    Needham, MA 02494
                                    (781) 444-8888

## CERTIFICATE OF SERVICE

I, James Hoyt, hereby certify that a true copy of the above Motion and Amended Complaint was sent to the following persons this 8th day of February, 2005, by U.S. Mail, postage prepaid.

William B. Chapman
Melick, Porter & Shea, LLP
28 State Street
Boston, MA 02109-1775

Michael W. Reilly
Tommasino & Tommasino
2 Center Plaza
Boston, MA 02108

Paul Michienzie
Richard C. Demerle
Michienzie & Sawin, LLC
745 Boylston Street, 5th Floor
Boston, MA 02114

_____
James E. Hoyt

# EXHIBIT 3

THIS IS NOT A BINDER OF INSURANCE

**MASSACHUSETTS PROPERTY INSURANCE UNDERWRITING ASSOCIATION**
Two Center Plaza, Boston, Massachusetts 02108-1904
(617)723-3800,(800)392-6108,FAX (617)557-5678

07/26/2001

| POLICY NUMBER | EXPIRATION DATE |
|---|---|
| 0613788 - 8 | 09/24/2001 |

| NAMED INSURED & ADDRESS | PRODUCER |
|---|---|
| JOAN CHARLES A/K/A JOAN F. GREAVES<br>14 DITSON STREET<br>DORCHESTER     MA     02122 | ONE CALL INS AGCY<br>PO BOX 139<br>SUDBURY     MA   01776 |

The policy will expire at 12:01 A.M., standard time, on the expiration date shown and will not automatically be renewed. To renew your insurance, return the tear-off portion of the Renewal Offer/Premium invoice with either the Premium Due or Minimum Due.

THE RESIDENCE PREMISES COVERED BY THE POLICY IS LOCATED AT:
**14 DITSON STREET , DORCHESTER, MA 02122**
This offer applies to the Residence Premises. Coverage is provided where a Premium or Limit of Liability is shown for the Coverage.

| SECTION I COVERAGES: | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A | Dwelling | $200,000 | $1,173 |
| B | Other Structures | $10,000 | |
| C | Personal Property | $60,000 | |
| D | Loss of Use | $40,000 | |
| **SECTION II COVERAGES:** | | | |
| E | Personal Liability | $200,000 | $39 |
| F | Medical Payments to Others | $1,000 | |
| | | **TOTAL BASE PREMIUM** | **$1,212** |

**DEDUCTIBLE SECTION I:** $1,000
IN CASE OF SECTION I LOSS, WE COVER ONLY THAT PART OF THE LOSS OVER THE DEDUCTIBLE STATED.

**FORMS & ENDORSEMENTS** made part of this offer at the time of issue.

| | | | |
|---|---|---|---|
| DED ADJ | 12/96 | DEDUCTIBLE ADJUSTMENT | -$302 |
| HO 00 03 | 04/91 | SPECIAL FORM | |
| HO 01 20 | 10/99 | SPECIAL PROVISIONS - MASSACHUSETTS | |
| HO 04 16 | 04/91 | PREMISES ALARM OR FIRE PROTECTION SYSTEM | -$29 |
| HO 04 44 | 04/91 | RESIDENCE PREMISES - THREE OR FOUR FAMILY DWELLING | $293 |
| HO 04 96 | 04/91 | NO SECTION II-LIABILITY FOR HOME DAY CARE COVERAGES | |
| HO 23 71 | 04/91 | MASSACHUSETTS TENANTS RELOCATION EXPENSE | $8 |
| HO 24 41 | 11/94 | LEAD POISONING EXCLUSION - MASSACHUSETTS | -$34 |
| HO FP | 12/96 | SPECIAL ENDORSEMENT | |

| | |
|---|---|
| TOTAL PREMIUM ADJUSTMENT | -$64 |
| TOTAL ANNUAL PREMIUM | $1,148 |
| 25% DOWNPAYMENT (IF APPLICABLE) | $287.00 |

MORTGAGEE
NATIONAL CITY MORTGAGE CO
ISAOA/ATIMA
PO BOX 1024
DAYTON     OH   45401-1024

RATING INFORMATION:     FAMILY   0003    Frame     TERRITORY   02    PROTECTION   02

TO INSURED: THE RENEWAL OFFER/PREMIUM INVOICE HAS BEEN SENT TO YOUR PRODUCER
IF IT IS NOT ENCLOSED WITH THIS NOTIFICATION.

Date: 07-26-2001          UMAHOEXP          INSURED COPY