UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO.: 04-11625 RWZ

|   |   |
|---|---|
| JOAN CHARLES,<br>  Plaintiff,<br><br>v.<br><br>OCWEN FEDERAL BANK, OCWEN FINANCIAL CORPORATION, MASSACHUSETTS PROPERTY INSURANCE UNDERWRITING ASSOCIATION and ONE CALL INSURANCE AGENCY, INC.,<br>  Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT MASSACHUSETTS PROPERTY INSURANCE UNDERWRITING ASSOCIATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, Massachusetts Property Insurance Underwriting Association ("MPIUA"), in this action, by and through its counsel, Michael W. Reilly, Esq., Tommasino & Tommasino, and hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment.

### I.   INTRODUCTION

Plaintiff brought this action against various entities, including Defendant MPIUA, after having suffered a significant fire loss for a three family home. Plaintiff alleges liability on part of these entities for "non-payment of insurance premiums which led to a lapse of coverage, or alternatively the wrongful refusal of insurance coverage." (Complaint, at 1). Defendant MPIUA moves this Court for Summary Judgment as to the Counts alleged against it. MPIUA issued

Policy No. 0662672-3 to Plaintiff Joan Charles for 14 Ditson Street, Dorchester, MA for a policy period of January 8, 2003 to January 8, 2004. The premium for that policy was paid. (Affidavit of Joseph Tragno, ¶ 4). On December 4, 2003, an Expiration Premium Invoice/Renewal Offer was forwarded to Joan Charles, 14 Ditson Street, Dorchester, MA and her insurance agent, One Call Insurance Agency, Inc., 121 B Tremont Street, Brighton, MA. (Affidavit of Joseph Tragno, ¶ 6).

On or about January 7, 2004, payment was due for the hazard insurance premium on the property policy provided by MPIUA. (Complaint, ¶ 11). No request for a Renewal Policy was received by MPIUA prior to the expiration of the existing policy. (Affidavit of Joseph Tragno, ¶ 8). Payment was not made and the policy expired on or about January 8, 2004. (Complaint, ¶ 11;Affidavit of Joseph Tragno, ¶ 8,9). On or about February 2, 2004, Plaintiff's property suffered a significant fire loss. (Complaint, ¶¶ 11-13, 15). On this same date, after the fire loss already occurred, Plaintiff, through her son, attempted to tender payment of the insurance premium to MPIUA. MPIUA did not accept such payment. (Complaint, ¶¶ 16-17).

In her action against MPIUA, Plaintiff alleges: (i) Negligence (Count I); (ii) Breach of Contract - Notice (Count X); (iii) Breach of Contract – Tender of Premium (Count XI); (iv) Breach of Contract – Payment of Claim (Count XII); (v) Violation of M.G.L. c. 175, § 193P (Count XIII). (Complaint, ¶¶ 49-51, 62-64, 66-68, 70-72, 74-75). Defendant MPIUA requests that this Court grant Summary Judgment as to all of the above referenced Counts.

## II.    STANDARD OF LAW

Summary Judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law.  Mass. Rule 56(c), Mass. R. Civ. P.; *Ng Brothers Construction, Inc. v. Cranney*, 436 Mass. 638, 643-44 (2002); *Cassesso v. Commissioner of Correction*, 390 Mass. 419, 422 (1983); *Community National Bank v. Dawes*, 369 Mass. 550, 553 (1976).  The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law.  *Pederson v. Time, Inc.*, 404 Mass. 14, 16-17 (1989).  The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial.  *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 716, 575 N.E.2d 734 (1999); *Fleshner v. Technical Communications Corp.,* 410 Mass. 805, 809 (1991).  Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact.  *Pederson*, 404 Mass. at 17.  In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits.  *Community National Bank v. Dawes*, 369 Mass. 550 (1976); Mass. R. Civ. P. 56(c).

The responsibility of construing and interpreting the language of an insurance contract rests with the Court as a question of law.  *Cody v. Connecticut General Life Ins. Co.*, 387 Mass. 142, 146 (1982).  The Court's underlying purpose is to determine the intent of the parties by examining the language of the policy read as a whole.  *Falmouth National Bank v. Ticor Title Ins. Co.*, 920 F.2d 1058, 1061 (1st Cir. 1990); *King v. Prudential Ins.*, 359 Mass. 46, 50 (1971).

Insurance policies are to be construed as a contract in a manner like any other contract. *Citation Ins. Co. v. Gomez*, 426 Mass. 379, 381 (1998); *Save-Mor Supermarkets, Inc. v. Skelly Detective Services, Inc.,* 359 Mass. 221, 226 (1971). The insurance contract must be construed as a whole, *Sherman v. Employers' Liability Assurance Corp.,* 343 Mass. 354, 357 (1961), and effect must be given to every word whenever possible. *Feinberg v. Insurance Co. of North America*, 260 F.2d 523 (1st Cir. 1958), *see also Hakim v. Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 283 n.11 (1991).

In interpreting insurance policies "when the provisions of a policy are plainly and definitely expressed, the policy must be enforced in accordance with the terms." *Mayer v. Medical Malpractice Joint Underwriting,* 40 Mass. App. Ct. 266, 269 (1996). A court will not disregard clear and unambiguous language that the insurer inserted into the policy that was accepted by the insured. *Reliance Ins. Co. v. Aetna Cas. & Surety Co.,* 393 Mass. 48, 52 (1984); *see also Jacobs v. United States Fidelity & Guaranty Co.,* 417 Mass. 75, 78 (1994). The words of an insurance policy are to be construed according to the "fair meaning of the language used, as applied to the subject matter…" *Mayer* at 269 *quoting Johnson v. Hanover Ins. Co.,* 400 Mass. 259, 266 (1987). "An ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other's." *Suffolk Construction Co. v. Lanco Scaffolding*, 47 Mass. App. Ct. 726, 729 (1999); *see also Citation Ins. Co. v. Gomez*, 426 Mass. 379, 381 (1998). "Controversy between the parties does not itself create an ambiguity." *Hanover Ins. Co. v. Fasching*, 52 Mass. App. Ct. 519 (2001).

### III.   THE DEFENDANT MASSACHUSETTS PROPERTY INSURANCE UNDERWRITING ASSOCIATION IS NOT LIABLE TO THE PLAINTIFF BECAUSE THERE WAS NO VALID INSURANCE POLICY IN FORCE ON THE DATE OF LOSS

**A.   Plaintiff Joan Charles has no reasonable expectation of proving negligence against the Defendant MPIUA.**

In Count VII of her complaint, Plaintiff asserts that "MPIUA had an affirmative duty to provide proper billing to the persons responsible for payment of the premiums, to provide notice of failure to pay to all parties, and to provide notice of lapse or expiration of coverage" and that "MPIUA negligently breached that duty by failing to bill the persons responsible for payment of the premium (Ocwen), by failing to send any party notice that the payment was overdue, and by failing to send any party notice that the coverage had lapsed or expired or was in jeopardy of the same." (Complaint, ¶¶ 49-50).  Based on the undisputed facts and affirmative evidence negating such allegations, Plaintiff fails to set forth a valid claim for negligence on the part of MPIUA.

Plaintiff's insurance policy was never cancelled; it expired on January 8, 2004 because the Plaintiff and/or her representatives did not follow the renewal procedures. (See Exhibit "3", Expiration Notification/Renewal Offer; Exhibit "2", HO-FP (12-01)).  As the insurance contract requires, MPIUA issued a Renewal Offer/Premium Invoice to the insured and his/her producer. For coverage to continue without interruption, the premium must be returned to the MPIUA before the policy expiration date. (See Affidavit of Joseph Tragno, ¶ 5,6).  MPIUA sent Ms. Charles and One Call Insurance Agency a notice of Renewal/Expiration on December 4, 2003, indicating that a premium was due on January 7, 2004 in order to renew the policy.  (See Exhibit

"3"). MPIUA never received any such payment on Ms. Charles' policy on or before the policy expiration date. (Affidavit of Joseph Tragno, ¶ 8). If an insured does not follow the renewal procedures, the policy is not renewed. (See Exhibit "2").

Plaintiff asserts that MPIUA's failure to bill Ocwen, the mortgagee, is negligent. An insurer has no such duty to bill a mortgage company. See *Chisholm v. Commonwealth Mortg. Co., Inc.*, 37 Mass.App.Ct. 925, 639 N.E.2d 733 (1994). MPIUA issued an Expiration Premium Invoice to Joan Charles and to her insurance agent, One Call Insurance Agency, Inc. (See Exhibit "3"). MPIUA did not have a duty to Plaintiff to bill Ocwen for the renewal policy and therefore did not breach any such duty. "A mortgagee is perfectly capable of monitoring whether a mortgagor has routinely renewed a casualty insurance policy…It is only when expiration of coverage is unexpected **because the insurer has decided** to cancel or not renew, that a mortgagee needs forewarning through notice." (emphasis supplied) *Chisholm v. Commonwealth Mortg. Co., Inc.*, 37 Mass.App.Ct. 925, 926-7, 639 N.E.2d 733, 735 (1994) (where mortgagee brought suit against fire insurer of the premises, seeking damages for insurer's failure to notify mortgagee that policy had been allowed to lapse, the Appeals Court held that mortgagee was not entitled to notice from insurer that policy had expired because insureds had failed to renew it). The policy at issue here was not subject to any unexpected cancellation or non renewal. MPIUA forwarded to Plaintiff and her insurance agent an offer of renewal on her policy. (See Affidavit of Joseph Tragno, ¶ 6). No case law, statute, or the insurance contract requires that an insurer notice or bill a mortgagee for routine renewal of the insurance policy.

It is immaterial to the instant matter, as alleged by Plaintiff, that Ocwen was the party responsible for payment of the premium. MPIUA does not bill mortgagees. (Affidavit of Joseph Tragno, ¶ 13). Plaintiff points to no statute, regulation, case law or contractual language which requires such billing to the mortgagee in addition to billing the insured and her broker. A

mortgagee is not entitled to notice from a fire insurer that a policy had expired because insureds had failed to renew it. *Chisholm v. Commonwealth Mortg. Co., Inc.*, 37 Mass.App.Ct. 925, 639 N.E.2d 733 (1994). A mortgagee is only entitled to notice if the insurer canceled or refused to renew the policy. *Id*. Plaintiff and her producer were put on notice by MPIUA that the policy was to expire on January 8, 2004. (See Exhibit "3"). MPIUA did not receive payment of the renewal premium before the due date. Consequently, the policy expired on January 8, 2004. (Affidavit of Joseph Tragno, ¶ 8, 9).

> **B.    There was no breach of contract because Massachusetts Property Insurance Underwriting Association gave sufficient notice that the policy was to expire and could be renewed in accordance with the procedures set forth in the contract.**

MPIUA did not breach its contract of insurance with regards to (a) notice; (b) tender of premium; or (c) payment of a claim, as Plaintiff argues. Plaintiff alleges breach of contract in Count X for "failure to bill the persons responsible for payment of the premium (Ocwen), failure to send any party notice that the payment was overdue, and/or failure to send any party notice that the coverage had lapsed or expired or was in jeopardy of the same." (Complaint, ¶¶ 63,64). MPIUA does not bill mortgage companies for renewal premiums and no statute, regulation, case law, or provision of the insurance contract requires such billing. (Affidavit of Joseph Tragno, ¶ 13; See also *Chisholm v. Commonwealth Mortg. Co., Inc.*, 37 Mass.App.Ct. 925, 639 N.E.2d 733 (1994)).

MPIUA issued a Renewal Offer/Premium Invoice along with an Expiration Notification to Plaintiff and her insurance agent, One Call. (See Exhibit "3"). In so doing, MPIUA provided the policyholder and her producer with proper and adequate notice of the Policy expiration; that

there was a Renewal Offer on the Policy; and what steps to take in order to renew the Policy. The Renewal Offer explicitly states, "The Association offers to renew this policy. To accept this renewal offer please return the tear-off portion of this invoice and payment to the Association. To avoid a lapse in coverage, this invoice and payment must be received by the Association on or before the Expiration date/Due date." (See Exhibit "3"). Furthermore, the Expiration Notification included with the Renewal Offer states, "The policy will expire at 12:01 A.M., standard time, on the expiration date shown [01/08/2004] and will not automatically be renewed. To renew your insurance, return the tear-off portion of the Renewal Offer/Premium Invoice with either the Premium Due or Minimum Due." (See Exhibit "3"). Despite these instructions, MPIUA never received the payment on or before the expiration date/due date and the policy expired/was not renewed. (Affidavit of Joseph Tragno, ¶ 8, 9).

      **C.**    **When Plaintiff, through her representatives attempted to renew the policy after the fire loss, that attempt was ineffective according to the renewal procedures set forth in the insurance contract and under the common law "known loss" doctrine.**

Plaintiff further alleges, "by rejecting the tendered premium on the day of loss [February 2, 2004], MPIUA acted contrary to its own policy and therefore was in breach of its contract with Plaintiff." (Complaint, ¶¶ 66-68). Plaintiff through her son, attempted to pay the renewal premium on February 2, 2004, at approximately 4:50 p.m., both after the loss to the property had already occurred and after the MPIUA office had closed. (Complaint, ¶¶ 16,17; Affidavit of Joseph Tragno, ¶ 12). According to language in Plaintiff's Homeowner Policy, if payment for a renewal "is received by Massachusetts Property Insurance Underwriting Association after the

time period provided in the Renewal Offer/Premium Invoice, Massachusetts Property Insurance Underwriting Association will determine whether to provide coverage, on what terms coverage will be provided and when coverage will become effective." (See Exhibit "2", Section D, paragraph two). Because Plaintiff attempted to tender payment of the premium **after** the time period provided in the Renewal Offer, MPIUA reserved the right to determine whether or not to provide coverage. MPIUA will not issue an HO3 Homeowner's Policy if the property sought to be insured has a known risk. (Affidavit of Joseph Tragno, ¶ 11).

Plaintiff, through her representative attempted to secure an insurance policy after knowledge of the fire loss. The "known loss" doctrine applies, barring coverage for Plaintiff's loss. *U.S. Liability Ins. Co. v. Selman*, 70 F.3d 684, 690, C.A.1 (Mass.),1995. The "known loss" doctrine flows from the basic principle that insurance protects against fortuitous events and not against known certainties. *SCA Servs., Inc. v. Transp. Ins. Co*., 419 Mass. 528, 532-33 (1995); *Bartholomew v. Appalachian Ins. Co*., 655 F.2d 27, 29 (1st Cir. 1981). It follows from this general principle that an insured cannot insure against the consequences of an event which has already begun. *Appalachian Ins. Co. v. Liberty Mut. Ins. Co*., 676 F.2d 56, 63 (3d Cir. 1982). Under Massachusetts law, the common law version of the "known loss" doctrine applies and insurance coverage is precluded when the insured actually knows on or before the effective date of the policy either that a loss has occurred or that one is substantially certain to occur. *U.S. Liability Ins. Co. v. Selman*, 70 F.3d 684, 690, C.A.1 (Mass.),1995. This rule has been recognized in Massachusetts and by leading authorities on the subject of insurance. See *Bettigole v. American Employers Ins. Co*., 30 Mass.App.Ct. 272, 274, 567 N.E.2d 1259 (1991); *In re Perrone*, 284 B.R. 315, 319-320, Bkrtcy.D.Mass., 2002; Couch, Insurance §§ 1.5, 2:7 (rev.2d ed.1984); R. Keeton & A. Widiss, Insurance Law § 4 (1988).

According to the Special Endorsement HO-FP (12-01) of Plaintiff's insurance policy[1] and under the "known loss" doctrine, MPIUA owed no duty to Plaintiff to accept her tendered payment after the loss had already occurred, and therefore did not breach any affirmative duty owed to Plaintiff.

    **D.    MPIUA did not breach the insurance contract with respect to payment of a claim because there was no valid insurance policy in effect at the time of the loss.**

Plaintiff alleges breach of contract with respect to payment of a claim, stating that "on or about February 3, 2004, Plaintiff made a claim on her fire/hazard insurance policy with MPIUA for the damage sustained in the fire of February 2, 2004" and that as a result of MPIUA's "refusal, failure and/or neglect to pay or honor such claim, Plaintiff has been harmed." (Complaint, ¶¶ 70-72). Based on the undisputed facts, Plaintiff did not have a valid insurance policy on the date of loss; it expired on January 8, 2004. (Complaint, ¶ 13). Her attempt to renew the policy after the loss was invalid. Under the MPIUA's Homeowner Policy (HO 03), coverage "applies only to 'bodily injury' or 'property damage' which occurs during the policy period." (See Exhibit "1", Homeowners Policy (HO 00 03), Section II – Conditions, paragraph "I" Policy Period). Therefore, since Plaintiff no longer had coverage under an insurance contract with the MPIUA, the MPIUA owed no duty to honor such claim.

---

[1] The HO-FP (12-01) states if payment is received by MPIUA "after the time period provided in the Renewal Offer/Premium Invoice, **Massachusetts Property Insurance Underwriting Association will determine whether to provide coverage, on what terms coverage will be provided and when coverage will become effective**" (emphasis supplied). (See Exhibit "2").

> **E.  MPIUA offered the Plaintiff renewal of her insurance policy, and therefore did not violate M.G.L. ch. 175, § 193P, because it was not an insurer with an "intent not to renew or reissue a policy."**

Plaintiff alleges that "MPIUA failed to properly and adequately notify Plaintiff of its intent not to renew or reissue its policy at least forty-five (45) days prior to the expiration of the policy." (Complaint, ¶ 74). Under M.G.L. ch. 175, § 193P:

> The insurer will give written notice of its intent not to renew or reissue a policy to the insured at least forty-five days prior to the expiration of the policy which notice shall state or be accompanied by a writing stating the specific reasons for such decision. The notice so required shall…be sent or delivered either to the named insured at the mailing address shown in the policy or to the insurance agent of the company or the insurance broker who negotiated the issuance of the policy.

M.G.L. ch. 175, § 193P (2005).

The statute does not apply because MPIUA was not an insurer with an "intent not to renew or reissue a policy." The MPIUA insurance contract contains the same provisions in the HO-FP (12-01) endorsement as those stated in the statute above (see Exhibit "2", Section D. Non-Renewal, paragraph 3), but these terms simply do not apply here it because this case involves a non-renewal by the insured, and not a non-renewal initiated by the insurance company. MPIUA intended to renew the policy, which is why it sent the Renewal Offer/Premium Invoice to the Plaintiff. (See Exhibit "3"; Affidavit of Joseph Tragno, ¶¶ 6-7). M.G.L. ch. 175, § 193P applies to the situation where an insurer does not wish to continue to do business with an insured. It does not apply to the situation where an insured does not want to do business with the insurer, as evidenced by the insured's failure to pay the premium for insurance. In this case, from MPIUA's point of view, it offered to renew the insurance policy and Ms.

Charles decided not to accept the renewal offer since acceptance required payment of the premium by the policy expiration date and the premium was not paid.

Plaintiff is unable to show that MPIUA intended not to renew or reissue the policy, making M.G.L. ch. 175, § 193P inapplicable to this situation. On or about December 4, 2003, MPIUA forwarded a Renewal Offer/Premium Invoice, with a premium due of $1,906.00 (minimum due $476.50) on January 8, 2004, to the Plaintiff Joan Charles, 14 Ditson Street, Dorchester, MA, and a copy to the Producer, One Call Insurance Agency, Inc., 121 B Tremont Street, Brighton, MA. (See Exhibit "3"). Therefore, Plaintiff has no reasonable expectation of proving that MPIUA did not intend "to renew or reissue its policy," as evidenced by the issuance of a renewal offer to Plaintiff.

Furthermore, MPIUA, through the issuance of this Renewal Notice, provided the Plaintiff with adequate notice of expiration of her insurance policy. Under the HO-FP (12-01) Endorsement to Plaintiff's insurance policy, if the MPIUA elects not to renew the policy, they must notify the insured via written notice at least forty-five days before the expiration date of the policy. (Exhibit "2"). The MPIUA offered to renew the policy; the Plaintiff elected not to renew it. Because the Plaintiff and/or her representatives chose not to renew the policy, and not the MPIUA, the expiration (and the notice of expiration) of Plaintiff's insurance policy on January 8, 2004 was valid.

The Plaintiff asks the Court to apply the statue in this case. If M.G.L. ch. 175, § 193P were to apply in circumstances like these, where there is a non-renewal by an insured, as opposed to by the insurer, it would produce a bizarre result. It would basically mean, for example, that the insurer, after expiration of the policy because the insured has chosen not to renew, would have to issue a notice of non-renewal or cancellation from that point forward, and in essence, provide the insured with forty-five (45) days of free insurance. M.G.L. ch. 175, §

193P clearly only applies where the insurer is the active/initiating party "because only then can it know the date when 'cancellation or non-renewal takes effect.' The insurer cannot know until the expiration date whether the policy holder will come marching in at the eleventh hour with a completed renewal application and premium payment to renew the insurance policy." *Chisholm v. Commonwealth Mortg. Co., Inc.*, 37 Mass.App.Ct. 925, 926, 639 N.E.2d 733, 734 (1994).

## IV.  CONCLUSION

The Property was not covered by an MPIUA Policy on February 2, 2004. Plaintiff's policy expired prior to the date of loss and attempts to renew the policy after the fact were invalid. Because Plaintiff did not have coverage with MPIUA on the date of loss, Massachusetts Property Insurance Underwriting Association is therefore not liable to Plaintiff. As a matter of law, MPIUA is entitled to Summary Judgment against the Plaintiff since there are no genuine issues of material fact and as a matter of law no rational view of the evidence permits a finding for the Plaintiff.

The Defendant, Massachusetts Property Insurance Underwriting Association moves this Court to grant its Motion for Summary Judgment on all Counts.

Respectfully submitted,
By my attorney,

/s/ Michael W. Reilly

Michael W. Reilly, Esq.
Tommasino & Tommasino
2 Center Plaza
Boston, MA  02108
(617) 723-1720
MA BBO# 415900