UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11625-RWZ

JOAN CHARLES

v.

OCWEN FEDERAL BANK, FSB, et al.

MEMORANDUM OF DECISION

March 26, 2007

ZOBEL, D.J.

　　　Plaintiff Joan Charles ("Charles") has brought this action against Ocwen Federal Bank, FSB,[1] the Massachusetts Property Insurance Underwriting Association ("MPIUA"), and One Call Insurance Agency, Inc. ("One Call"), alleging, inter alia, breach of contract and negligence, all arising out of the non-renewal of her homeowner's insurance. All parties have now filed cross-motions for summary judgment. The disposition of the respective motions follows.

I.   **Background**

　　　In January 2002, plaintiff refinanced her mortgage on her three-story apartment building at 14 Ditson Street, in Dorchester, Massachusetts. That mortgage was later assigned to Ocwen Loan Servicing. One provision of the mortgage agreement required plaintiff to obtain homeowner's property insurance coverage (including insurance

---

[1] Ocwen Loan Servicing, LLC is the successor-in-interest to Ocwen Federal Bank, FSB. Accordingly, hereinafter, I will refer to Ocwen Loan Servicing, LLC as "Ocwen Loan Servicing," "Ocwen Bank" or "Ocwen."

against fire and hazards) on the building. (Docket # 55-2, Ex. 4, Mortgage Agreement between New Century Mortgage Corporation and Joan Charles, dated 1/7/02, ¶ 5). Plaintiff purchased the homeowner's insurance policy through Harold Salant, an insurance agent associated with One Call Insurance, an insurance brokerage company. The MPIUA issued the homeowner's insurance policy to plaintiff. (Docket # 45-5, Ex. D, Massachusetts Homeowners Policy between the MPIUA and Charles). Ocwen Loan Servicing was the "servicer" of the mortgage loan. Under the terms of the insurance policy, plaintiff was to make periodic payments of the monthly insurance premiums to Ocwen. The payments were earmarked for deposit into an escrow account held by Ocwen, which would then be used by Ocwen to pay the homeowner's insurance premium when the payment became due. Under the terms of the mortgage agreement, plaintiff was required to "promptly furnish" to Ocwen notice of premiums due. (Docket # 55-2, Ex. 4, Id. ¶ 3).

    On December 4, 2003, the MPIUA issued a "Renewal offer/ Premium invoice" to plaintiff, informing her that her policy would "expire" on January 8, 2004, and informing her that she could "renew" her policy by filling out the lower portion of the payment coupon and returning it with the payment. Plaintiff concedes that she received this notice, but contends that she placed the notice in an envelope addressed to Ocwen at the address which appeared on the back of her regular monthly Ocwen mortgage payment invoice and mailed the envelope first class postal mail. She contends that Ocwen must have received the notice, as the envelope was never returned to sender. Ocwen disputes this; it contends that the notice was not properly mailed and that it

never received the renewal, and therefore the premium was not paid when due on January 7, 2004. The policy later expired on January 8, 2004.

On February 2, 2004, the property was substantially destroyed by fire. After learning that the insurance premium had not been paid by Ocwen, on February 3, 2004, plaintiff's son attempted to pay the insurance premium to MPIUA at their office in Boston, MA, but it refused the payment. On February 6, 2004, Ocwen sent the MPIUA payment for the insurance premium. The check was returned on February 12, 2004.

Ocwen had in place a forced placement hazard policy from Assurant Group ("Assurant"). This default policy was designed to ensure that the property was insured at all times, and it was in effect at the time of the fire. Assurant offered to pay approximately $86,000 for the loss. To date, however, no monies have been paid to either Ocwen or plaintiff under the Assurant policy.

On July 21, 2004, plaintiff filed the instant suit against Ocwen, One Call and the MPIUA. Plaintiff has alleged that the actions of the defendants led to the wrongful refusal of insurance coverage. In particular, she has alleged various violations of federal and state laws against Ocwen Bank, as well as breach of contract and

negligence actions against One Call and the MPIUA.[2]  All parties have now filed cross-motions for summary judgment.

## II. Discussion

Under Fed. R. Civ. P. 56, summary judgment is "warranted if – viewing the evidence in the light most favorable to [the non-moving party] and drawing all reasonable inferences in their favor – no genuine issue of material fact remains." Daley v. Twin Disc, Inc., 440 F. Supp. 2d 48, 50 (D. Mass. 2006) (citing Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 684 (1st Cir. 1994)).

### A. Plaintiff Charles' Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment (Docket # 32) on only Count I of her multi-count complaint (i.e., violation of 12 U.S.C. § 2605 ("Real Estate Settlement Procedures Act" or "RESPA")).  She argues that the plain language of RESPA requires judgment in her favor.  In particular, she asserts that under the statute, the servicer had an absolute duty to make the payments in a timely manner, regardless of whether or

---

[2] In particular, plaintiff has alleged the following causes of action:  **Against Ocwen**: **Count I** (Violation of 12 U.S.C. § 2605, the "Real Estate Settlement Procedures Act" or "RESPA"); **Count II** (Violation of 15 U.S.C. § 1692c, the "Fair Debt Collection Act"); **Count III** (Violation of Mass. Gen. Laws ch. 93A); **Count IV** (Violation of Mass. Gen. Laws ch. 93 and 93A); **Count V** (Negligence); **Count VIII** (Breach of Contract); **Count XIV** (Intentional Infliction of Emotional Distress); **Count XV** (Trespass to Chattel); **Count XVI** (Trespass); **Count XVII** (Intentional Infliction of Emotional Distress); **Count XVIII** (Trespass to Chattel); and **Count XIX** (Trespass).
   **Against One Call:  Count VI** (Negligence); **Count IX** (Breach of Contract); and
   **Against the MPIUA:  Count VII** (Negligence); **Count X** (Breach of Contract – "Notice"); **Count XI** (Breach of Contract – "Tender of Premium"); **Count XII** (Breach of Contract – "Payment of Claim"); and **Count XIII** (Violation of Mass. Gen. Laws ch. 175 § 193P).

4

not notice was given. Defendant counters that such reading would import a strict liability standard into the statute which is not supported by legislative intent. The statute states, in pertinent part:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, <u>the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due</u>.

12 U.S.C. § 2605 (g) (emphasis added).[3]

The statute further states:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure . . . .

12 U.S.C. § 2605 (f). No case law directly addresses the question whether the failure to make timely payment gives rise to liability where the servicer lacks notice of the payment obligation. <u>See</u>, <u>e.g.</u>, <u>Hyderi v. Washington Mut. Bank, FA</u>, 235 F.R.D. 390, 399 (N.D. Ill. 2006) (noting that "it appears that no reported decision concerning this apparently arcane provision of RESPA [12 U.S.C. § 2605 (g)] has ever been issued;"

---

[3] Similarly, regulations promulgated by the Department of Housing and Urban Development under the RESPA statute state:

> (1) If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the disbursements in <u>a timely manner, that is, on or before the deadline to avoid a penalty</u>, as long as the borrower's payment is not more than 30 days overdue. (2) The servicer must advance funds to make disbursements in a timely manner as long as the borrower's payment is not more than 30 days overdue.

24 C.F.R. 3500.17(k) (emphasis added).

declining to certify class of plaintiffs alleging that bank's policy of not paying insurance premiums where bank did not receive a bill resulting in the untimely payment of homeowner's insurance premiums violated RESPA).

"As in other cases involving statutory interpretation, we look first to the [statute's] plain language." Campbell v. Washington County Technical Coll., 219 F.3d 3, 6 (1st Cir. 2000) (internal citations omitted). Turning, then, to the plain language of the statute, the statute on its face contains no reference to a notice requirement. Rather, the language expressly states that "the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due." 12 U.S.C. § 2605 (g). Accordingly, I do not read the statute to require the servicer to have notice or actual knowledge of when the payments become due. Neither plaintiff nor defendant cites any portion of the legislative history or public policy which would compel a different result.

Thus, plaintiff's partial motion for summary judgment on Count I is allowed.

### B.     Ocwen's Motion for Partial Summary Judgment

Ocwen Loan Servicing moves for partial summary judgment (Docket # 48) with respect to the following counts only: Count I (Violation of 12 U.S.C. § 2605, "RESPA"); Counts III and IV (Violation of Mass. Gen. Laws ch. 93A); Count V (Negligence); and Count VIII (Breach of Contract).

First, Ocwen argues that it did not violate RESPA because it was not first provided notice of the payment obligation. As discussed supra, Section A, the

language of the statute is ambiguous, and therefore defendant's motion for summary judgment on this claim is similarly denied.

Second, plaintiff argues that by failing to pay the insurance premium, exercising its foreclosure rights under the mortgage and providing negative payment history to credit reporting agencies, Ocwen committed unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A[4] and ch. 93, § 49.[5] In order to establish a violation of Chapter 93A, plaintiff must demonstrate that the conduct at issue "(1) fall[s] within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) be immoral, unethical, oppressive, or unscrupulous; and (3) cause[] substantial injury." Serpa Corp., v. McWane, Inc., 199 F.3d 6, 15-16 (1st Cir. 1999) (internal citations omitted). However, "[t]he law is firmly established, however, that a violation of [Mass. Gen. Laws ch.] 93A requires, at the very least, more than a finding of mere negligence." Robinson v. Bodoff, 355 F. Supp. 2d 578, 584 (D. Mass. 2005) (internal citations omitted).

---

[4] Plaintiff does not specify under which section of Chapter 93A she proceeds. Based on the rest of the Amended Complaint, however, this court presumes plaintiff proceeds under the consumer section of the unfair trade statute, Mass. Gen. Laws ch. 93A, §9, which provides, in pertinent part: "[a]ny person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . may bring an action . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper." Mass. Gen. Laws ch. 93A, § 9(1).

[5] That statute provides, in pertinent part: "No one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner." Mass. Gen. Laws ch. 93, § 49.

Here, Ocwen argues that it did not have proper notice of the timing of its payment obligation, and thus, at most, its conduct constituted negligence which cannot provide the basis for a Chapter 93A claim.  With respect to its failure to pay the insurance premium due, defendant's argument is persuasive.  However, plaintiff has alleged that additional actions by Ocwen Bank, namely, its exercising its foreclosure rights under the mortgage and providing negative payment history to credit reporting agencies under the circumstances alleged here, may constitute an unfair trade practice.  With respect to these bases for both Chapters 93 and 93A claims, there is an issue of fact. Accordingly, defendant's motion for summary judgment on plaintiff's cause of action for a violation of Mass. Gen. Laws chs. 93 and 93A is denied.

Third, Ocwen argues that plaintiff cannot establish a cause of action in negligence because she cannot establish the elements of duty, breach, causation and damages.  In particular, Ocwen argues that it had no duty to pay the premiums; rather its duty was limited to paying the insurance premiums <u>only</u> when notified that a payment was due.  This is a question of fact for the jury.  Accordingly, defendant's motion for summary judgment on plaintiff's cause of action for negligence is denied.

Finally, Ocwen argues that the mortgage, which constitutes the contract at issue here, did not require Ocwen to pay the insurance premiums without notice of the timing of the payment obligation and thus there was no breach of contract.  Because there is a genuine issue of fact here – did plaintiff send in her renewal thereby triggering Ocwen's payment obligation – summary judgment is not appropriate.

Thus, Ocwen's motion for partial summary judgment on Counts I, III, IV, V and VIII is denied.

**C.     MPUIA's Motion for Summary Judgment**

The MPIUA also moves for summary judgment (Docket # 46) on all claims against it (namely, Count VII (Negligence); Counts X, XI and XII (Breach of Contract); and Count XIII (Violation of Mass. Gen. Laws ch. 175 § 193P)).

With respect to plaintiff's breach of contract claim, the contract at issue is the policy of insurance issued by the MPIUA to Charles. Plaintiff contends that defendant breached the contract provisions with respect to: (1) notice that the insurance policy was about to expire; (2) tender of premium; and (3) payment of a claim. First, it is undisputed that the MPIUA issued a "Renewal offer/ Premium invoice" on December 4, 2003 which informed plaintiff that failure to pay the premium and renew the policy would result in its expiration.[6] Thus, the MPIUA did not breach the contractual provision requiring notice. It is undisputed that the MPIUA did not receive payment of the insurance premium on or before the policy expiration date.

Second, plaintiff contends that defendant breached its contract by failing to accept the premium tendered by plaintiff's son the day after the fire had destroyed the property. But she points to no contractual provision requiring the MPIUA to accept such payment.

Third, plaintiff contends that defendant breached its contract by failing to pay the claim. This argument is unavailing. It is uncontroverted that the contract required timely payment of the premium. Absent such payment, there was no contractual

---

[6] The "Renewal offer/ Premium invoice" dated December 4, 2003 states, in pertinent part: "To avoid a lapse in coverage this invoice and payment must be received by the Association on or before the Expiration/Due date." (Docket # 45-6).

obligation to pay an uninsured claim.  Thus, plaintiff's breach of contract claim is without merit.

Plaintiff next contends that the MPIUA had a duty to ensure that the payments were made on time, and its failure to do so constituted negligence.  Its argument is unavailing.  An insurer has no duty to ensure that payments are timely.  See Chisholm v. Commonwealth Mortg. Co., Inc., 37 Mass. App. Ct. 925, 926, 639 N.E. 2d 733, 734 (Mass. 1994) (affirming district court's grant of motion for summary judgment where plaintiff insured sued defendant insurer by reason of insurer's failure to notify insured that the insurance policy had been allowed to lapse; court rejected plaintiff insured's "right to have been notified by the insurer that coverage had not been renewed").

Finally, plaintiff contends that the defendant violated the Massachusetts insurance law governing notice of non-renewal, Mass. Gen. Laws ch. 175, § 193P.[7] That statute requires an insurance company to provide written notice of intent not to renew or reissue the policy at least forty-five days prior to the expiration of the policy. See Mass. Gen. Laws ch. 175, § 193P; Brooks v. Hanover Ins. Co., 23 Mass. App. Ct. 992, 994, 504 N.E.2d 1075, 1077 (1987) (insurer liable for fire damage that occurred after the expiration of policy where insurer failed to send notice of non-renewal at least 45 days before the expiration of the policy).  The record is clear, however, that this

---

[7] That section states, in pertinent part: "no policy providing protection against loss by reason of fire to a dwelling or contents thereof shall be issued unless it contains a provision that the insurer will give written notice of its intent not to renew or reissue a policy to the insured at least forty-five days prior to the expiration of the policy which notice shall state or be accompanied by a writing stating the specific reasons for such decision."  Mass. Gen. Laws ch. 175 § 193P.

statute does not apply. The MPIUA contends that it was not an insurer with an "intent not to renew or reissue a policy." Rather, here it sent plaintiff a written notice of renewal on December 4, 2003.[8] Accordingly, this case involves a non-renewal by the insured, and not a non-renewal initiated by the insurer. Since the statute requires the insurer to "give written notice only of its intent not to renew or reissue a policy to the insured," Mass. Gen. Laws ch. 175, § 193P (emphasis added), and it did not have such intent, the MPIUA's motion for summary judgment on Counts VII, X, XI, XII and XIII is allowed.

### D. One Call's Motion for Summary Judgment

Defendant One Call, charged only with negligence (Count VI) and breach of contract (Count IX), moves for summary judgment (Docket # 44-1) on both claims. Plaintiff alleges in her complaint that defendant One Call: (1) breached its contract; and (2) that it failed to discharge a legal duty to "ensure and coordinate payment of the insurance premium" and to "provide notice or forward correspondence between [plaintiff and Ocwen]." (Docket # 45, Amended Complaint ¶¶ 45, 58-59). One Call contends that plaintiff cannot establish breach of contract due to an absence of insurance coverage; rather, One Call maintains that plaintiff cannot establish breach of contract and that an insurance agent owes no legal duty to ensure and coordinate payment of the insurance premium.

---

[8] That written offer of renewal stated, in pertinent part: "We will not renew this policy automatically. A renewal offer/premium invoice will be sent to you. In order to continue coverage without interruption, you must return the premium invoice with your payment to Massachusetts Property Insurance Underwriting Association, before the expiration date of this policy."

First, plaintiff points to no contract between her and One Call, nor to any contractual terms breached.[9]  Second, it is axiomatic that a "broker ordinarily has no duty, absent a request from the client or an undertaking by the broker, to obtain insurance or to renew a policy about to expire."  <u>Construction Planners, Inc. v. Dobax Ins. Agency, Inc.</u>, 31 Mass. App. Ct. 672, 675 (1991).  Accordingly, One Call's motion for summary judgment on Counts VI and IX is allowed.

### III.    Conclusion

For the foregoing reasons, plaintiff Charles' motion for partial summary judgment (Docket # 32) (seeking judgment on Count I) is ALLOWED.  Defendant Ocwen Bank's motion for partial summary judgment (Docket # 48) (seeking to dismiss Counts I, III, IV, V and VIII) is DENIED.  Defendant MPIUA's motion for summary judgment (Docket # 46) (seeking to dismiss Counts VII, X, XI, XII and XIII) is ALLOWED.  Defendant One Call's motion for summary judgment (Docket # 44) (seeking to dismiss Counts VI and IX) is ALLOWED.  Finally, plaintiff's emergency motion to compel discovery and for sanctions (Docket # 64) is DENIED as moot.

|       March 26, 2007       | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |

---

[9]  In plaintiff's Memorandum of Law in Opposition to Motions for Summary Judgment (Docket # 70), plaintiff apparently no longer pursues the breach of contract theory, and instead states: "Plaintiff asserts liability against One Call based entirely on One Call's negligence in ensuring that the MPIUA insurance was properly coordinated." (Mem. of Law at 6).